**EMILY SOHN REBELSKEY**
IA Bar No. AT0013536
Rebelskey Law Office, PLLC
308 E Burlington St. #281
Iowa City, IA 52240
emily@rebelskeylaw.com
+1 (319)-849-8286
**ATTORNEY FOR PETITIONER**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| FELIPE de JESÚS HERNÁNDEZ MARCELO<br><br>v.<br>DONALD J TRUMP, President of the United States;<br>PAMELA BONDI, Attorney General of the United States;<br>SIRCE OWEN, Acting Director of the Executive Office for Immigration Review;<br>KRISTI NOEM, Secretary of the Department of Homeland Security;<br>TODD LYONS, Acting Director of Immigration and Customs Enforcement ("ICE");<br>JEROME KRAMER, St. Paul Field Office Director, ICE;<br><br>BRENNA BIRD, Attorney General, State of Iowa;<br>JAMES PATRICK BARRY, Muscatine County Attorney. | Case No.3:25-cv-94<br><br>Agency No. A 240-135-699<br><br>AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>Hearing Scheduled: Friday September 5, 2025 at 2:00PM. |

August 29, 2025

TABLE OF AUTHORITIES

**Cases**

- *Aguilar Maldonado v. Olson*, 0:25-cv-03142, D. Minnesota (August 15, 2025)
- *Borbot v. Warden Hudson Cnty. Corr. Facility,* 906 F.3d 274, 279 (3d Cir. 2018)
- *Demore v. Kim*, 538 U.S. 510, 523 (2003)
- *INS v. St. Cyr*, 533 U.S. 289, 314 (2001)
- *In re Marshall*, 805 NW 2d 145, 145, 148 (Iowa 2011)
- *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978)
- *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)
- *Kriener v. Turkey Valley Community School Dist.*, 212 NW2d 526, 530 (Iowa 1973)
- *Mathews v. Eldridge*, 424 U.S. 319, 333, 335 (1976)
- *Mayo Anicasio v. Kramer et. al.*, 4:25CV3158, D. Nebraska, (August 14, 2025)
- *Nnadika v. Att'y Gen. of the United States*, 484 F.3d 626, 632 (3d Cir. 2007)
- *Reno v. Flores*, 507 U.S. 292, 306 (1993)
- *Reynosa Jacinto v. Trump*, 4:25CV3161, D. Nebraska (August 19, 2025)
- *State v. Hernandez-Lopez*, 639 NW 2d 226, 241 (Iowa 2002)
- *State v. Ochoa*, 792 NW 2d 260 (Iowa 2010)
- *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)
- *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)

**Statutes**

- 8 U.S.C. § 1101 et. seq.
- 8 U.S.C. § 1182
- 8 U.S.C. § 1221 et seq.
- 8 U.S.C. § 12236(a)(2)(B)
- 8 U.S.C. § 1225(b)
- 8 U.S.C. § 1225(b)(2)
- 8 U.S.C. § 1225(b)(2)(A)
- 8 U.S.C. § 1226
- 8 U.S.C. § 1226(a)
- 8 U.S.C. § 1226(a)(2)(A)
- 8 U.S.C. § 1226(c)
- 8 U.S.C. § 1229a
- 8 U.S.C. § 1231(a)
- 8 U.S.C. § 1231(a)(2),(6)
- 28 U.S.C. § 1331
- 28 U.S.C. § 1367
- 28 U.S.C. § 2241
- 28 U.S.C. § 2243
- Iowa Code 804.11
- REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005)

- Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585
- Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025)

**Constitutional Provisions**

- Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause)
- Fifth Amendment (Due Process Clause)

**Regulations**

- 8 CFR 1240
- 8 C.F.R. § 1003.19(i)(2)
- 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)

**Rules**

- Fed. R. Civ. P. 19(a)(1)
- Fed. R. Civ. P. 19(a)(2)

## INTRODUCTION

1. Felipe de Jesús Hernández Marcelo ("Petitioner") is both riddled with bulletholes and semi-permanently stuck in the Muscatine County Jail. He has been in custody for approximately 8 weeks at the time of filing the instant petition, and thus far cannot find anyone–state or federal–willing to hold a hearing on the merits as to whether or not he should be detained. Petitioner seeks injunctive and declaratory relief to remedy his unlawful detention.

2. Muscatine County Jail is *both* an ICE Non-Dedicated Intergovernmental Detention facility and an Iowa county jail facility. Throughout the pendency of Petitioner's immigration case, it has been difficult to ascertain whether Petitioner is under State or immigration custody. A complaint has been filed with the Iowa Office of Professional Regulation regarding the Muscatine County Attorney's actual and potential conflicts of interest, and an investigation is currently pending.

3. The State of Iowa currently has custody of Petitioner, owing to a writ of habeas corpus ad testificandum ("the State's writ") obtained on July 3, 2025. Exh. Q, filing at 119. The State's writ effectively transfers any custody that ICE purports to have to the State of Iowa.[1] Even if the state's writ were vacated, Petitioner would revert to ICE's custody and still be held in Muscatine County Jail.

4. If ICE's custody of Petitioner should end, the State's writ would cease to transfer any custody at all. Accordingly, Petitioner requests no specific relief as to the State's writ itself. However, because the State currently holds custody, the named State of Iowa Respondents are necessary parties to this matter. Fed. R. Civ. P. 19(a)(1) and (2).

5. Until August 25, 2025, Petitioner was also in State custody to a material witness bond. Exh. AA, filing at 149. Procedural safeguards required by the Iowa Supreme Court were not followed. The grounds for the bond, stated in the criminal complaint and trial information, were impermissibly discriminatory, based entirely on Petitioner's immigration status. Although that matter has since been dismissed, the State has not foregone the possibility of re-filing material witness charges. Exh. GG filing at 159, Exh. HH filing at 160. Accordingly, Petitioner requests that the state be enjoined from pursuing further material witness charges against him related to the events of June 21, 2025.

---

[1] The State should exercise extreme caution when transferring ICE's custody to itself, because the level of due process owed to Respondents in ICE custody is significantly lower than the level of due process required by the Iowa Constitution when impinging the physical liberty of residents of the State of Iowa. *Compare Borbot v. Warden Hudson Cnty. Corr. Facility,* 906 F.3d 274, 279 (3d Cir. 2018) *with State v. Ochoa*, 792 NW 2d 260 (Iowa 2010) (Iowa Constitution provides broader protection against unreasonable search and seizure than the 4th Amendment of the United States Constitution); *Morales Diaz v. State*, 896 NW 2d 723 (Iowa 2017) (an Iowa criminal defendant's right to effective immigration advice is broader than similar rights provided by the US Supreme Court's decision in *Padilla v. Kentucky* (internal citation omitted)); *Matter of Guardianship of Hedin*, 528 NW 2d 567 (Iowa 1995) (providing the right to counsel in Iowa guardianship proceedings on account of significant risks to wards' physical liberty).

## JURISDICTION

6. Petitioner brings claims against the Department of Homeland Security Immigration and Customs Enforcement and Removal Operations as well as the Department of Justice Executive Office for Immigration Review, relating to his detention under the Constitution and immigration laws of the United States. 8 U.S.C. § 1101 et. seq.;

7. This court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

### REAL ID Act

8. Use of the Writ of Habeas Corpus to challenge detention by U.S. Immigration and Customs Enforcement ("ICE") is available after the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005) ("REAL ID Act")(emphasis added.) *See*, *e.g.*, *Mayo Anicasio v. Kramer et. al.*, 4:25CV3158, D. Nebraska, (August 14, 2025); *Aguilar Maldonado v. Olson*, 0:25-cv-03142, D. Minnesota (August 15, 2025); *Reynosa Jacinto v. Trump*, 4:25CV3161, D. Nebraska (August 19, 2025).

9. Section 106(c) of Title I of the REAL ID Act, amending INA § 242(a)(2)(A), (B), and (C), and § 242(g), although limiting habeas jurisdiction, applies only to those challenges to a "final administrative order of removal." *Nnadika v. Att'y Gen. of the United States*, 484 F.3d 626, 632 (3d Cir. 2007) (holding that the proper venue for a habeas petition challenging detention remains with the district court); see also *INS v. St. Cyr*, 533 U.S. 289, 314 (2001) ("The writ of habeas corpus has always been available to review the legality of executive detention.")

10. Petitioner has not yet received any final order of removal. Petitioner's claims relate to his detention under 8 USC §1226 and not his removability under 8 USC §1229a, and thus the jurisdiction-stripping provisions of the REAL ID Act do not apply here.

### Exhaustion of Federal Remedies

11. Petitioner has made every effort to exhaust available administrative remedies. Petitioner waited approximately 6 weeks for a hearing before the Immigration Judge ("IJ"), who ultimately denied bond jurisdiction under 8 USC §1225(b)(2) without any citation or legal reasoning. The IJ's bond decision has been appealed to the Board of Immigration Appeals and that appeal remains pending–no briefing schedule has yet been issued. Exh. L, filing at 108. Upon information and belief, that appeal will take months, not days or weeks, to be decided.

### Supplemental Jurisdiction Regarding State Custody

12. This Court has supplemental jurisdiction to hear Petitioner's State law claims under 28 U.S. Code §1367.

13. Petitioner's Federal and State custody claims all form part of the same case or controversy and arise from the same common nucleus of operative fact. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

14. Petitioner's claims do not present any novel issues regarding Iowa state law. The Supreme Court of Iowa has provided clear guidelines regarding pre-trial detention of witnesses, and those guidelines have not been followed here. *See State v. Hernandez-Lopez*, 639 NW 2d 226, 241 (Iowa 2002).

15. Petitioner's state law claims do not predominate the claim or claims over which the district court has original jurisdiction. Even if the state's material witness bond were voluntarily dismissed, Petitioner would immediately revert to ICE custody and still be detained in Muscatine County Jail.

16. In addition, Petitioner's claims against the State present mixed questions of state and immigration law. Petitioner's attempts to explain his immigration status to State officials and judges have been met with general unwillingness to understand any of the relevant immigration laws.

## **VENUE**

17. Venue is proper because Petitioner is detained in Muscatine County Jail, located in Muscatine, Iowa, within the Eastern Division of the Southern District of Iowa.

## **IDENTITIES OF RESPONDENTS**

18. Respondent Donald Trump is named in his capacity of President of the United States, having power to direct the actions of all federal executive agencies listed herein.

19. Respondent Pamela Bondi is named in her capacity as Attorney General of the United States, having the power to direct the actions of the United States Department of Justice, the executive agency that includes the Executive Office for Immigration Review ("EOIR").

20. Respondent Sirce Owen is named in her capacity as Acting Director of EOIR, having the power to direct the actions of all immigration judges throughout the United States.

21. Respondent Kristi Noem is named in her capacity as the Secretary of the Department of Homeland Security, and has the power to direct the actions of ICE.

22. Respondent Todd Lyons is named in his capacity as the Acting Director of ICE, and has the power to direct the actions of ICE Enforcement and Removal Operations ("ICE/ERO").

23. Respondent Jerome Kramer is named in his capacity as ICE St. Paul Field Office Director, and has the capacity to direct the actions of ICE/ERO in the state of Iowa.

24. Respondent Brenna Bird is named in her capacity as Attorney General for the State of Iowa ("the State"), and has the power to direct the actions of county attorneys who represent the State in criminal prosecutions.

25. Respondent James Patrick Barry is named in his capacity as Muscatine County Attorney, and has the power to direct both the actions of the State in prosecuting criminal matters in Muscatine County, and the power to direct the actions of Muscatine County Sheriff.

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

26. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed."

27. "The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time." Jones v. Shell, 572 F.2d 1278, 1280 (8th Cir. 1978). Due to the time-sensitive nature of this proceeding, Petitioner asks this Court to expedite proceedings in this case as necessary and practicable for justice.

## FACTUAL CIRCUMSTANCES

28. Petitioner is a native and citizen of Mexico, admittedly having entered the United States without admission or parole on an unknown date in early 2021. Petitioner has since resided in Muscatine, Iowa and had no contact with the Department of Homeland Security prior to June of 2025. See Exh E1, filing at 39. He has no final order of removal, no criminal history relevant to his immigration status, and no other pending criminal charges. *Id.*

29. Petitioner was the *victim* of an attempted carjacking on June 21, 2025. See Exh. D1, filing at 12. Criminal prosecutions of the perpetrators are ongoing, but nobody disputes that Petitioner was shot. One or two bullets went through his wrist, through his thigh, and into the back of his calf. Petitioner nearly died. Petitioner was transported to Trinity Hospital in Davenport, and then airlifted to University of Iowa Hospitals and Clinics ("UIHC") where he underwent emergency surgery to remove fragments of bone and bullets, as well as blood transfusions which ultimately saved his life. Exh. II, filing at

30. Petitioner is in immense physical pain. Petitioner can no longer walk with a normal gait. Petitioner is using crutches. Petitioner did not receive and has not been receiving the pain relief medication prescribed to him by the UIHC. Petitioner missed both of his scheduled follow-up appointments with the UIHC Trauma Clinic. Petitioner is not receiving any physical rehabilitative services. Petitioner's chances of ever recovering

normal use of his leg dwindle with each passing day that he is confined to Muscatine County Jail.

31. Petitioner has a nine-year-old son, currently in the care of Petitioner's mother, the child's grandmother. Exh. D4, filing at 19. None of Petitioner's family members have been able to visit him because they lack the necessary identification that would permit them to enter Muscatine County Jail; and because the family understandably fears any further contact with Muscatine County law enforcement. The family is suffering immensely because they have lost the income that Petitioner provided them. See Exh. D7-D10, filing at 25 - 31.

**Petitioner's Custody at Muscatine County Jail**

32. Petitioner initially came into custody–State custody–on June 25, 2025. Exh. N, filing at 112. Following his release from the hospital, Petitioner attempted to retrieve his car from impound in Muscatine. Upon presenting at the impound (on crutches and full of bulletholes–he brought a friend to drive), Petitioner was arrested by the Muscatine Police on a bench warrant for driving under suspension, to which he immediately pled guilty and was sentenced to pay a fine of $250. Exh. P, filing at 114. Any of Petitioner's objections relating to the initial arrest and conviction will be pursued in the form of state post-conviction relief. Thus the initial arrest does not contribute to any of the claims raised in this matter.

33. On June 25, 2025, the same day Petitioner was arrested by the State, Petitioner was issued an I-200 Warrant for Arrest of Alien (Exh. A, filing at 1), an I-862 Notice to Appear in Immigration Court (Exh. B, filing at 2), and an I-286 Notice of Custody Determination stating that Petitioner was being detained pursuant to 8 USC 1226. Exh. C, filing at 5. He was then placed in ICE/ERO custody in Muscatine County Jail.

34. The Department of Homeland Security charges that Petitioner is removable per 8 U.S.C. §1229a, such that he is entitled to full removal proceedings before an Immigration Judge, and he is entitled to the opportunity to present any defenses. Exh. B, filing at 2, *See also* 8 CFR 1240. Petitioner's ultimate removability under 8 USC §1229a is an entirely separate legal issue from whether or not he should be detained under either 8 U.S.C. §1226 or §1225(b)(2).

35. DHS further issued a Notice of Custody Determination alleging that DHS had custody of respondent pursuant to 8 U.S.C. §1226. DHS' Custody Determination states that Petitioner is subject to §1226 detention *and not §1225(b)(2)*. Exh. C, filing at 5.

36. Two immigration bond hearings were scheduled in the matter of Petitioner's detention, one on July 24, 2025 and another on August 14, 2025.

37. At the bond hearing on July 24, Petitioner did not appear. That hearing was to take place by WebEx videocall from inside Muscatine County Jail, and did not require any prisoner transport. See Exh. V, filing at 131. When Petitioner did not appear at the scheduled time, undersigned Counsel reached out by phone to Muscatine County Jail staff, who

assured Counsel that they were aware of the hearing and Petitioner's need to appear. *Id.* Counsel convinced the IJ to hear Petitioner's case last, and waited for Petitioner to appear on the videocall. *Id*, see also Exh. X, filing at 137.

38. Petitioner was never delivered to the July 24th hearing. Petitioner reports that he was sitting in his cell the entire time. The IJ ultimately continued the matter of Petitioner's bond and detention to August 14, 2025, resulting in Petitioner's prolonged detention for three additional weeks before he could either bond out of immigration detention or exhaust administrative remedies. See Exh. G, filing at 87.

## STATE CUSTODY

39. It was discovered that Petitioner had not attended the hearing because the State had obtained custody of Petitioner without informing Petitioner's counsel.

40. On July 3, 2025, the State petitioned for and obtained a writ of habeas corpus ad testificandum in criminal matters 07701 FECR 073446 (State v. Kallenberger) and 07701 FECR 073440. The petition for the State's writ requests transfer of custody of Petitioner from Muscatine County Jail (the ICE non-dedicated Intergovernmental Detention Facility) to Muscatine County Jail (the State of Iowa county jail facility) and/or Muscatine County Courthouse, "for the necessary stages of all proceedings, from day to day hereafter, until released by the Court." Exh. R, filing at 117, 118.

41. While the Court issued the writ itself on July 3, 2025, the Court did not enter an order regarding the writ until July 7, 2025. Exh. S, filing at 120. The order states: "The Sheriff of Muscatine County shall take all reasonable measures to house and maintain the prisoner while in his custody. The Sheriff is further ordered at the conclusion of these proceedings to return the victim/witness from his place of confinement in the Muscatine County Jail to a designated location made by the Department of Homeland Security." *Id.*

42. Both 07701 FECR 073440 and 07701 FECR 073446 remain pending jury trial currently set for October 6th and 10th, 2025. The Court has not yet ordered that Petitioner be released. Therefore, the State currently holds custody from July 3, 2025 forward.

### State Material Witness Charges

43. It was also discovered that on July 14, 2025, the state of Iowa obtained a material witness bond against Petitioner in the amount of $25,000. Exh. AA, filing at 149. The criminal complaint and trial information upon which the bond was based alleged that Petitioner would not be available to accept service of a subpoena solely due to his immigration status. Exh. Z, filing at 148. The State explained in an emergency hearing before Judge Bert of the Seventh District of Iowa that it had sought the bond because the State was aware that Petitioner had an immigration bond hearing coming up, and "he could have gotten out at that time." Exh. X, filing at 139.

44. The Supreme Court of Iowa has "acknowledge[d] the serious risk of the erroneous deprivation of an individual's right to be free from physical restraint created by the

material witness statute," *In re Marshall*, 805 NW 2d 145, 145 (Iowa 2011), and "the notion of incarcerating an innocent individual who happens to be a witness to a crime is troublesome." *Id.* at 148. The power of the state to arrest and detain material witnesses not charged with a crime has generally been narrowly construed. *Id.* at 158.

45. In order to "mitigate the risk of error"--and to preserve the facial validity of the statute–the Supreme Court of Iowa has provided clear procedural safeguards for the use of material witness bonds. *State v. Hernandez-Lopez*, 639 NW 2d 226, 241 (Iowa 2002):

    a. Upon the arrest of a material witness, the arresting officer must inform the defendant of the reasons underlying the arrest. *Id.*

    b. At the initial appearance before the magistrate, the officer must disclose the evidence in support of the arrest. *Id.*

    c. Following the hearing, the magistrate must explain the reasons for further detaining the individual. *Id.*

    d. The magistrate is also authorized to release the person under section 811.2. *Id.*

46. The record shows no proceedings before a magistrate upon service of the arrest warrant. If any of the necessary magistrate proceedings actually took place in this matter, they were not in a language that Petitioner understood. He did not understand why he was served with an arrest warrant. Nor was he provided any meaningful opportunity to consult with counsel, nor given the opportunity to make any statements in his defense.

47. No notice of the material witness matter was provided to undersigned Counsel. Petitioner himself was served with documents related to the material witness bond, but they were all in English, a language he does not speak or understand. Indigent defense counsel was appointed (Exh. DD, filing at 153), although indigent defense counsel does not speak Spanish, and Petitioner reports that indigent defense counsel never called nor visited him.[2] All letters from indigent defense counsel to Petitioner were in English. Petitioner found this stressful, to say the least.

48. In response to being informed that Petitioner would be filing his own habeas corpus petition in federal court, and that ineffective assistance of counsel would form part of his

---

[2] Undersigned Counsel's decision not to substitute for indigent defense counsel was complicated, and ultimately motivated by Iowa Rule of Professional Conduct Rule 32:3.7, Lawyer as Witness, as counsel had sent Respondent Barry several emails stating that she was available to accept service on Petitioner's behalf, and consenting to electronic service−ultimately a factual issue relating to the State's probable cause in the matter. Counsel did not think it prudent to risk being conflicted out of all the other matters in which she represents Petitioner.

claim, Petitioner's indigent defense counsel filed a motion to dismiss the material witness bond on August 25, 2025. Exh. FF, filing at 156. Respondent Barry, also having been informed of Petitioner's intent that morning, filed his own motion to dismiss a few hours later. Exh. GG, filing at 159. The Iowa District Court dismissed the matter, albeit without prejudice. Exh. HH, filing at 160.

49. Respondent Barry has not forgone the possibility of filing material witness charges again. See Exh. GG, filing at 159, Exh HH, filing at 160.

50. Respondent Barry has also not forgone the possibility of filing criminal charges related to the events of June 21, 2025. Exh. GG, filing at 159. However, Petitioner has already been in the State's custody for approximately eight weeks and no such criminal charges have been filed.

51. Following the dismissal of the material witness matter, the State's current custody rests solely on the State's writ, which transfers ICE's custody of Petitioner to the State.

### Second Immigration Bond Hearing and Order

52. Counsel then entered appearances on the State's prosecutions as victim's counsel and obtained an emergency order from the Iowa District Court for Muscatine County, directing the Muscatine County Sheriff to deliver Petitioner to his next scheduled immigration bond hearing on August 14, 2025. Exh. T, filing at 122; Exh. U, filing at 123; Exh. V, filing at 131; Exh. Y, filing at 146. Iowa Courts are courts of equity and have broad jurisdiction to do whatever is in the interest of justice. *See, e.g*, *Kriener v. Turkey Valley Community School Dist.*, 212 NW2d 526, 530 (Iowa 1973).

53. On August 14, 2025 Petitioner *did* appear via WebEx videocall at his scheduled bond hearing.

54. During that hearing, the IJ acknowledged that Petitioner had submitted a decent brief regarding bond eligibility and whether or not Petitioner was in §1226 or §1225(b)(2) custody. Exh. J, filing at 100. Nevertheless, the IJ went on to state that she had "done [her] own research," and concluded that Petitioner was detained under §1225(b)(2), and as such, EOIR lacked jurisdiction to make any custody determination or to set a bond. Exh. I, filing at 98. The IJ's order to that effect cites no case law and contains no legal reasoning. *See id.*

55. Petitioner reserved appeal as to his immigration bond eligibility, and filed an EOIR-43, Notice of Appeal to the Board of Immigration Appeals, on August 22, 2025. Exh. L, filing at 108. The appeal remains pending as of the date of this petition, and briefing schedules have not yet been issued.

### Immigration Custody Legal Framework

56. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333

(1976). To determine what process Petitioner is due, this Court should consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *See Id*. at 335.

57. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

58. Due Process requires that there be "adequate procedural protections" to ensure that the government's asserted justification for a noncitizen's physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

59. In the immigration bond context, the Supreme Court recognizes only two purposes for civil detention: preventing flight and mitigating the risks of danger to the community. Zadvydas, 533 U.S. at 690; Demore, 538 U.S. at 528. A noncitizen may only be detained based on these two justifications if they are otherwise statutorily eligible for bond. Zadvydas, 533 U.S. at 690.

60. Also in the immigration bond context, EOIR retains the power to order immigration respondents released on their own recognizance. 8 USC § 12236(a)(2)(B). Traditionally, this power is often used in the context of immigration respondents who are pregnant, nursing, or otherwise present complex medical needs in the absence of evidence of flight risk or danger to the community.

61. Title 8 of the United States Code, § 1221 et seq., controls the United States Government's authority to detain noncitizens during their removal proceedings. The INA authorizes detention for noncitizens under four distinct provisions:

    a. Discretionary Detention, 8 U.S.C. § 1226(a) generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings, and permits those noncitizens who are not subject to mandatory detention to be released on bond or on their own recognizance;

    b. Mandatory Detention of "Criminal" Noncitizens. 8 U.S.C. § 1226(c) generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

   c. Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b) generally requires detention for certain noncitizen applicants for admission, such as those noncitizens arriving in the U.S. at a port of entry or other noncitizens who have not been admitted or paroled into the U.S. and are apprehended soon after crossing the border.

   d. Detention Following Completion of Removal Proceedings. 8 U.S.C. § 1231(a) generally requires the detention of certain noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. Id. at § 1231(a)(2),(6).

62. The instant case concerns the detention provisions at §§ 1226(a) and 1225(b). Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

63. Following enactment of the IIRIRA, the Executive Office for Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination") (emphasis added).

64. For nearly thirty years, ICE and EOIR practice was that most noncitizens apprehended in the interior of the United States after they had been living in the U.S. for more than two years (as opposed to "arriving" at a point of entry, border crossing, or being apprehended near the border and soon after entering without inspection) received a bond hearing. If determined to not be a danger to the community or a flight risk and, as a result, granted a change in custody status, the individuals were released from detention either on their own recognizance or after paying the bond amount set by the IJ in full. 8 U.S.C. § 1226(a)(2)(A).

65. Recently, ICE has—without warning nor any publicly-stated rationale—reversed course and adopted a policy of attempting to treat all individual noncitizens that were not previously admitted to the U.S. that are contacted in the interior of the U.S. at any time after their entry as "arriving" and ineligible for bond regardless of the particularities of their case.

66. As a result, ICE is now ignoring particularities that have historically been highly relevant to determinations whether a noncitizen such remain or custody or be released—such as:

when, why, or how they entered the U.S.; whether they have criminal convictions; whether they present a danger to the community or flight risk; whether they have serious medical conditions requiring ongoing care; whether U.S. citizen family members dependent upon them to provide necessary care; or, whether the noncitizen's detention is in the community's best interest.

67. Though no public announcement of this sweeping new interpretation of these statutes was announced, ICE now reasons, and argued in front of the IJ at Petitioner's bond redetermination hearing, that the mandatory detention provision of § 1225(b)(2)(A) applies to all people who enter without inspection who are alleged to be subject to grounds of inadmissibility at § 1182.

68. The IJ's in this matter apparently agreed with ICE's rationale. Her order denying bond simply states "No jurisdiction - 235(b)(2)(A)." The IJ's order provided no further citation or legal reasoning. Exh. I, filing at 98.

## **PRAYER FOR RELIEF**

69. WHERFORE, Petitioner prays the Court to enter an Order granting the Petition for Writ of Habeas Corpus and directing Respondents to comply as follows:

    a. EOIR Respondents to immediately enter an order that Petitioner be released on recognizance per 8 USC § 1226(a)(2)(B), or in the alternative immediately hold a bond hearing under 8 USC § 1226(a).

    b. DHS, ICE and ICE/ERO Respondents to immediately comply with the above-mentioned EOIR order and should any appeal follow, abstain from enforcing any automatic stay under the provisions of 8 C.F.R. § 1003.19(i)(2).

    c. State Respondents to:

        i. Abstain from filing any new material witness charges per Iowa Code 804.11 against Petitioner in relation to either 07701 FECR 073446 or 07701 FECR 073440.

        ii. Inform undersigned Counsel upon the filing of any new criminal charges based on events related to 07701 FECR 073446 and 07701 FECR 073440, with at least 24 hours notice prior to any initial appearance.

Respectfully Submitted this 29th day of August, 2025.

   /s/Emily Sohn Rebelskey

**EMILY SOHN REBELSKEY**
IA Bar No. AT0013536
Rebelskey Law Office, PLLC
308 E Burlington St. #281
Iowa City, IA 52240
emily@rebelskeylaw.com
+1 (319)-849-8286
**ATTORNEY FOR PETITIONER**