**EMILY SOHN REBELSKEY**
IA Bar No. AT0013536
Rebelskey Law Office, PLLC
308 E Burlington St. #281
Iowa City, IA 52240
emily@rebelskeylaw.com
+1 (319)-849-8286
**ATTORNEY FOR PETITIONER**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| FELIPE de JESÚS HERNÁNDEZ MARCELO<br><br>v.<br>DONALD J TRUMP, President of the United States;<br>PAMELA BONDI, Attorney General of the United States;<br>SIRCE OWEN, Acting Director of the Executive Office for Immigration Review;<br>KRISTI NOEM, Secretary of the Department of Homeland Security;<br>TODD LYONS, Acting Director of Immigration and Customs Enforcement ("ICE");<br>JEROME KRAMER, St. Paul Field Office Director, ICE;<br>BRENNA BIRD, Attorney General, State of Iowa;<br>JAMES PATRICK BARRY, Muscatine County Attorney. | Case No. 3:25-cv-94<br><br>Agency No. A 240-135-699<br><br>AMENDED MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER<br><br>Hearing Scheduled: Friday September 5, 2025 at 2:00PM. |

August 29, 2025

1

## INTRODUCTION

Felipe de Jesús Hernández Marcelo ("Petitioner"), by and through his undersigned counsel, hereby files this motion for a temporary restraining order to enjoin State and Federal Respondents from detaining him unlawfully. Petitioner incorporates by reference all statements contained in the Petition for Writ of Habeas Corpus.

Petitioner is a native and citizen of Mexico, admittedly having entered the United States without admission or parole on an unknown date in early 2021. Exh. B, filing at 2. Petitioner has since resided in Muscatine, Iowa and had no contact with the Department of Homeland Security prior to June of 2025. Exh. E1, filing at 40. He has no final order of removal, no criminal history relevant to his immigration status, and no other pending criminal charges. Exh. E1, filing at 40.

Petitioner was the *victim* of an attempted carjacking on June 21, 2025. Criminal prosecutions of the perpetrators are ongoing, and precise factual circumstances are still being investigated, but nobody disputes that Petitioner was shot. One or two bullets went through his wrist, through his thigh, and into the back of his calf. Petitioner nearly died. Petitioner was transported to Trinity Hospital in Davenport, and then airlifted to University of Iowa Hospitals and Clinics ("UIHC") where he underwent emergency surgery to remove fragments of bone and bullets, as well as blood transfusions which ultimately saved his life.

Petitioner is in physical pain. Petitioner can no longer walk with a normal gait. Petitioner is using crutches. Petitioner did not receive and has not been receiving the pain relief medication prescribed to him by the UIHC. Exh. D3, filing at 15. Petitioner is missing follow-up appointments with the UIHC Trauma Clinic. Exh. D3, filing at 16. Petitioner is not receiving any physical rehabilitative services. Petitioner's chances of ever recovering normal use of his leg dwindle with each passing day that he is confined to Muscatine County Jail.

Petitioner has a nine-year-old son, currently in the care of Petitioner's mother, the child's grandmother. Exh. E1, filing at 40. None of Petitioner's family members have been able to visit him because they lack the necessary identification that would permit them to enter Muscatine County Jail; and because the family understandably fears any further contact with Muscatine County law enforcement. The family is also suffering immensely because they have lost the income that Petitioner provided them.

## ARGUMENT

A temporary restraining order is governed by a four-factor test. Courts must consider whether a petitioner has shown: (1) a likelihood of success on the merits, (2) that he is likely to suffer irreparable harm in the absence of such relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008).

Here, Petitioner is likely to succeed on the merits of his petition for a writ of habeas corpus. Petitioner brings claims against both the federal immigration authorities and the State of Iowa for violations of his due process rights, on which he is likely to succeed. Furthermore, the

likelihood of further irreparable harm is undeniable, no government entity has any cognizable interest in violating the Constitution of the United States, and an injunction is in the public interest because it will discourage future unlawful government behavior.

**LIKELIHOOD OF SUCCESS ON THE MERITS**

As explained herein, Petitioner is likely to succeed on the merits of claims against both the Federal Government and the State of Iowa, such that a preliminary injunction and temporary restraining order is warranted.

## I. Petitioner is likely to succeed on the merits regarding his federal immigration custody.

Petitioner is likely to succeed in his claims against the federal government because ICE and EOIR's refusal to hold a bond hearing on the merits violates the Administrative Procedures Act, and because such refusal violates his due process rights under the 5th amendment of the United States Constitution.

### A. EOIR's refusal to hold a bond hearing on the merits violates the Administrative Procedures Act.

Under the Administrative Procedures Act, "the final agency action for which there is no other adequate remedy in court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E) *Citizens to Preserve Overton Park* v. *Volpe,* 401 U. S. 402, 414 (1971); *Bowman Transportation, Inc.* v. *Arkansas-Best Freight System, Inc.,* 419 U. S. 281 (1974).

A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine the reasons for agency decisions – or, as the case may be, the absence of such reasons." *Encino Motorcars LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (quoting *Motor Vehicles Mfrs. Assn of U.S. State Farm Mut. Auto Ins. Co.*, 462 U.S. 29, 43 (1983)); *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

Petitioner was encountered well within the interior of the United States, approximately four years after entry, and was charged as being an "alien present without having been admitted or paroled." Exh. B, filing at 2. Long-standing regulations and procedural norms would dictate that Petitioner is entitled to a bond hearing. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

ICE's own initial custody determination stated that Petitioner was detained under 8 USC 1226, the discretionary detention provision, such that Petitioner should be entitled to a bond hearing. ICE even filed Petitioner's first request for custody redetermination for him. Exh. C, filing at 5. ICE nevertheless 8 USC §1225(b)(2) argued before EOIR that he was subject to mandatory detention under 8 USC §1225(b)(2), without offering any rationale or argument as to why the agency had made such a radical departure. ICE's behavior in this matter is clearly arbitrary and capricious, and should be enjoined pursuant to by the court. See 5 U.S.C. § 706(2)(A), (E).

Similarly there is no explanation for EOIR's departure from its longstanding interpretation of its regulations. The immigration judge's entire decision reads: "Denied, because: No jurisdiction - 235(b)(2)(A)." The immigration judge did not mention any of the case law cited in Petitioner's memorandum of points and authorities. EOIR's behavior in this matter is also clearly arbitrary and capricious, and should be set aside. *See* 5 U.S.C. § 706(2)(A), (E).

### B. Petitioner's continued detention without a bond hearing violates his due process rights under the Fifth Amendment of the United States Constitution

The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. All people within the territorial bounds of the United States enjoy due process rights, regardless of citizenship. See e.g., *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("[T]here are literally millions of [non-citizens] within the jurisdiction of the United States…[and] the Fifth Amendment…protects every one of these persons.") (internal quotation marks omitted); *Yick Wo v. Hopkins*, 118 U.S. 356, 368-69 (1886). These protections apply equally to non-citizens facing deportation proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Zadvydas*, 533 U.S. at 721 ("[B]oth removable and inadmissible [non-citizens] are entitled to be free from detention that is arbitrary and capricious.") (Kennedy, J., dissenting).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process clause protects. Zadvydas, 533 U.S. at 690. Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for incarceration "outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690.

Immigration custody is not intended to be punitive; as such, the government has but two cognizable interests in pursuing discretionary detention under 8 USC 1226: mitigating 1) risk of flight and 2) danger to the community. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 528. Petitioner has not even had the opportunity for a hearing on the merits regarding these issues. The immigration record in this matter contains ample evidence of Petitioner's connections to the community, such that he has no reason to flee Muscatine, let alone the United States. The people close to him–particularly his son, mother, siblings–need him here. Petitioner also likely qualifies for immigration relief in the form of a U visa, 8 USC

1101(a)(15)(U), which would provide lawful status to both Petitioner and his son, such that it is no longer in his best interests to hide from immigration authorities.

Furthermore, ICE has presented no evidence of danger to the community. At worst, Petitioner's criminal history suggests he should be more careful to pay any outstanding traffic tickets in the future. ICE's own form I-213 does not even mention Petitioner's June 25, 2025 conviction as relevant to his immigration proceedings; and he has no other criminal convictions or pending charges. Exh. E1, filing at 39. If he did, ICE would have listed those in their Form I-213. *See id.* Because Petitioner presents neither a flight risk nor risk of danger to the community, the government has no cognizable interest in detaining him for the duration of his removal proceedings. He has thus far not even had the chance to present these arguments before EOIR. Thus, his continued detention deprives him of his liberty, without due process of law.

## II. Petitioner's State custody violates his due process rights under both the 5th and 14th Amendments of the United States Constitution.

Petitioner is likely to succeed on the merits against any State custody because the State's actions have violated both his 5th amendment right to due process, as well as his 14th amendment right to due process under the Equal Protection Clause of the United States Constitution.

### A. Petitioner's claims against the State of Iowa are not moot.

The State previously sought custody of Petitioner on the basis of a material witness bond which alleged that 1) he was a material witness to a felony (which Petitioner absolutely concedes) and 2) he was not amenable to service of a subpoena because he lacked formal immigration status in the United States. Exh. Z, filing at 148, Exh. EE, filing at 154. That charge, 07701 FECR 073518, was dismissed immediately proceeding the filing of the Petition in this matter, it was dismissed without prejudice. Exh. HH, filing at 161. The State's timely dismissal of the material witness bond smacks of gamesmanship, in order to avoid this Court's federal question and supplemental jurisdiction over the instant matter. Nothing prevents the state from filing similarly frivolous material witness charges in the future–neither Petitioner's status as a material witness to an ongoing criminal prosecution, nor his immigration status have meaningfully changed. It is true that a trial has been set and a subpoena has been served, directing Petitioner's attendance at trial on October 6 and 10, 2025. The ongoing nature of the State's prosecutions presents an ongoing and palpable risk to Petitioner's freedom from physical restraint.

Furthermore, the State *currently holds* custody of Petitioner pursuant to its own writ of habeas corpus ad testificandum. Exh. R, filing at 119. The petition for the State's writ requests transfer of custody of Petitioner from Muscatine County Jail (the ICE Non-dedicated Intergovernmental Detention Facility) to Muscatine County Jail (the State of Iowa county jail facility) and/or Muscatine County Courthouse, "for the necessary stages of all proceedings, from day to day hereafter, until released by the Court." Exh. R, filing at 117, 118. The Iowa District Court's order granting the writ states: "The Sheriff of Muscatine County shall take all reasonable

5

measures to house and maintain the prisoner while in his custody. The Sheriff is further ordered at the conclusion of these proceedings to return the victim/witness from his place of confinement in the Muscatine County Jail to a designated location made by the Department of Homeland Security." Exh. S, filing at 120. The State's writ has not yet been released by the Court, and proceedings remain ongoing. Assuming that ICE/ERO continues to honor said writ, Petitioner is in State custody. See also, Exh. X, filing at 139, 140.

### B. Petitioner's State custody violates his 5th Amendment due process rights.

Petitioner is likely to succeed on the merits of his claim against the State of Iowa because his continued detention violates his 5th Amendment due process rights under the Constitution of the United States.[1] The State currently holds custody of Petitioner pursuant to a writ of habeas corpus ad testificandum. The record reflects no State evidentiary hearing as to the merits of Petitioner's State detention under the writ. He was not served notice of the writ, nor did undersigned counsel have any opportunity to oppose the grant of that writ. In recent weeks, when threatened with the possibility of Petitioner's release from immigration custody, such that the State's writ would cease to transfer ICE custody, it has taken steps to detain him unlawfully using the Iowa material witness statute, Iowa Code ch 804.11. Exh. X, filing at 139.

The Supreme Court of Iowa has "acknowledge[d] the serious risk of the erroneous deprivation of an individual's right to be free from physical restraint created by the material witness statute," *In re Marshall*, 805 NW 2d 145, 145 (Iowa 2011). In order to "mitigate the risk of error"--and to preserve the facial validity of the statute–the Supreme Court of Iowa has provided clear procedural safeguards for the use of material witness bonds under Iowa Code ch. 804.11. *State v. Hernandez-Lopez*, 639 NW 2d 226, 241 (Iowa 2002): 1) Upon the arrest of a material witness, the arresting officer must inform the defendant of the reasons underlying the arrest. *Id.* 2) At the initial appearance before the magistrate, the officer must disclose the evidence in support of the arrest. *Id.* 3) Following the hearing, the magistrate must explain the reasons for further detaining the individual. *Id.* The magistrate is also authorized to release the person under section 811.2 [the provisions for bond]. *Id.* These procedures must be strictly followed to prevent an abuse of the powers provided by the material witness statute. *Id.*

No such procedural safeguards were followed in the previous material witness proceedings. The State of Iowa apparently assumed, whether based on his race, language, or immigration status, that Petitioner lacked the ability to seek and hire counsel of his own choosing. Petitioner was not given any meaningful opportunity to contact the Counsel he had actually hired, nor was Counsel informed. Exh. U, filing at 123. Undersigned counsel speaks Spanish and would have been able to explain what was happening to him, and

---

[1] And arguably also under the Constitution of the State of Iowa, although that *would* be a novel claim under State law. While Petitioner wishes to preserve any such claims for any future state-side litigation, Petitioner's claims relevant to this matter can be fully disposed of under the 5th and 14th Amendments of the United States Constitution, and Petitioner does not see the need to fully assert his State Constitutional claims here.

assisted Petitioner with mounting a defense–including filing an application for a court interpreter. Undersigned counsel would have also been able to explain to the magistrate why Petitioner's immigration status is not relevant to his ability to accept service of a subpoena, and that the State's material witness charges were not supported by probable cause. See Exh Z, filing at 148; Exh. EE, filing at 154; see also . Failure to inform undersigned Counsel of pending material witness charges prevented Counsel from ensuring Petitioner's presence at his July 24th bond hearing, resulting in three additional weeks of detention before Petitioner could either bond out of immigration custody or exhaust federal administrative remedies and vindicate his due process rights in federal district court. *See id.*

Instead, Petitioner was served with an arrest warrant, and instructed to complete an application for appointed counsel. The record does not reflect Petitioner being brought before a magistrate. The record does not reflect the charges being explained to Petitioner in any language that he understands, and Petitioner was not provided with copies of the criminal complaint and trial information–undersigned Counsel had to obtain those documents via EDMS. Petitioner did not receive evidence relevant to the State's probable cause until approximately August 8, 2025, at which point he received a sheaf of police reports and medical records accompanied by a letter from indigent defense counsel in English. Petitioner will testify that the indigent defense counsel appointed to him was unable to communicate with Petitioner in a language he understands, such that Petitioner had no understanding of what was happening to him, nor any appreciable opportunity to mount a defense.

### C. Petitioner's State custody violates his due process rights under the Equal Protection Clause of the United States Constitution.

Petitioner is likely to succeed in his claims against the State of Iowa because the State's actions towards him are driven by improper State animus on the basis of his immigration status. The Federal government has a very cognizable interest in enforcing the immigration laws of the United States. *Arizona v. United States*, 567 U.S. 387, 388 (2012). The State of Iowa does not. *Id.*, *see also*, *United States v. Iowa*, 126 F. 4th 1334, 1345 (8th. Cir 2025). Beyond just federal pre-emption, the Equal Protection clause protects "illegal aliens [*sic*]" against discrimination by the State on the basis of immigration status. *Plyler v. Doe*, 457 U.S. 202, 202 (1982).

The State's custody of Petitioner reflects improper animus due to immigration status, *res ipsa loquitur*. In the material witness bond matter, both the criminal complaint and the trial information claim that the State has probable cause to detain Petitioner because he cannot accept service of a subpoena due to his lack of lawful immigration status in the United States. Exh. Z, filing at 148, Exh. EE, filing at 154. One's immigration status is not relevant to one's ability to accept service of a subpoena in the state of Iowa. *See* Iowa R. Civ. P. 1.305 (stating that service is proper where it is made "[u]pon any individual who has attained majority and who has not been adjudged incompetent…" without any reference to immigration status); Iowa R.

Crim P. 2.15(4)(c) ("Service [of a subpoena] upon an adult witness is made by personally delivering a copy of the subpoena to the witness," without any reference to immigration status.)

If the State has no intention of filing similarly problematic charges in the future, then there is no harm to the State in entering a preliminary injunction against filing new material witness charges against Petitioner. There would, however, be a significant benefit to Petitioner insofar as his physical liberty would be protected from further unlawful State detention related to the pendency of the State's prosecutions of the people who shot him. Petitioner seeks a preliminary injunction directing Respondent Barry to inform undersigned counsel regarding the filing of new criminal charges, so that Counsel has a meaningful opportunity to represent Petitioner in any initial magistrate hearing, although Petitioner notes that he has been in State custody for eight weeks already and no such criminal charges have been filed.

## LIKELIHOOD OF IRREPARABLE HARM

Petitioner was placed in custody on approximately June 25, 2025, just four days after being shot and undergoing emergency surgery to remove bone and bullet fragments, as well as receiving blood transfusions, and one day after being released from University of Iowa Hospitals and Clinics.

It has taken some time for Petitioner to exhaust administrative remedies and acquire federal question jurisdiction. His wounds have largely closed. The primary ongoing risk to Petitioner's physical person is that his bones and muscles are healing without adequate medical supervision or care. Upon information and belief, Petitioner has not been seen by his UIHC care team since approximately July 11. Exh. II, filing at 162. He is missing appointments with the University of Iowa Hospitals and Clinics Trauma Clinic. Exh. II, filing at 164, 165. He is not receiving any kind of physical rehabilitation services. Thus, with each passing day, his body continues to heal in ways that will affect him–negatively, to say the least–for the rest of his life. Petitioner is still in a great deal of pain.

In addition, Petitioner has a nine-year-old son. Exh. D4, filing at 19. As far as the family is aware, the son's mother does not live in the United States. Petitioner's son is currently in the care of Petitioner's mother, and has not been able to visit Petitioner in jail because both the son and the mother lack appropriate identification to enter Muscatine County Jail.

Petitioner's son is also involved in potentially complex litigation before EOIR, and has a hearing set in that matter for September 4, 2025. Petitioner's continued incarceration severely restricts his ability to pursue immigration relief for his son, to wit, Special Immigrant Juvenile Status (8 USC 1101(a)(27)(J)), and potentially a U visa (8 USC 1101(a)(15)(U)). Without pursuing such relief forthwith, Petitioner's son is likely to be ordered removed from the United States per 8 USC 1229.

## BALANCE OF EQUITIES

The balance of equities and the public interest favor the issuance of a preliminary injunction and temporary restraining order in the instant matter. As noted above, the hardship for Petitioner is concrete and severe. Moreover, assuming that Petitioner's continued detention violates the Due Process Clause and the Suspension Clause, the government cannot be harmed by a constitutionally-mandated injunction. *See e.g.*, *Zepeda v. INS*, 753. F.2d 719, 729 (9th Cir. 1983) (noting that the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.")

## PUBLIC INTEREST

ICE and EOIR's behavior in this matter has been wildly unlawful, without regard to existing statutes, regulations, or thirty years of traditional practice–to say nothing of the due process owed to thousands of similarly-situated immigration respondents throughout the nation. An injunction is in the public interest because it will discourage these agencies from pursuing similarly unlawful action in the future.

Similarly, the actions of the State of Iowa have run roughshod over the due process rights of witnesses in state criminal proceedings. Even though the material witness proceeding against Petitioner has been dismissed, nothing prevents the State from taking similarly unlawful action in the near future. An injunction is in the public interest not only because it will prevent harm to Petitioner, but because it will discourage the State from taking similar unlawful action against similarly-situated immigrant witnesses in the future.

WHEREFORE, Petitioner moves the court to enter a preliminary injunction and temporary restraining order, providing the relief described in the Petition, until a decision can be reached in this matter.

Respectfully Submitted this 29th day of August, 2025.

   /s/Emily Sohn Rebelskey

**EMILY SOHN REBELSKEY**
IA Bar No. AT0013536
Rebelskey Law Office, PLLC
308 E Burlington St. #281
Iowa City, IA 52240
emily@rebelskeylaw.com
+1 (319)-849-8286
**ATTORNEY FOR PETITIONER**