IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| FELIPE DE JESUS HERNANDEZ MARCELO, | ) ) ) | Civil No. 3:25-CV-00094 |
| Petitioner, | ) ) | |
| v. | ) ) | BRIEF IN RESISTANCE TO |
| DONALD J. TRUMP, ET AL., | ) ) | PETITIONER'S AMENDED MOTION FOR PRELIMIARY |
| Respondents. | ) ) ) | INJUNCTION AND TEMPORARY RESTRAINING ORDER |

The below-listed Federal Respondents file this Brief in Resistance to Petitioner's Amended Petition for Writ of Habeas Corpus (ECF 12) and Petitioner's Amended Motion for Preliminary Injunction and Temporary Restraining Order (ECF 13).

## TABLE OF CONTENTS

I.   INTRODUCTION........................................................................... 2

    A.   Parties and Procedural Postures ........................................... 2

    B.   Pertinent Facts ..................................................................... 3

    C.   Summary of the Parties' Positions .....................................4

II.   OVERVIEW OF RELEVANT IMMIGRATION PROCESSES......................... 5

    A.   Legal Background for Individuals Seeking Admission into the United States ................................................................................. 5

    B.   Detention under 8 U.S.C. § 1225 ........................................... 5

    C.   Detention under 8 U.S.C. § 1226(a) .................................7

III.   ARGUMENT................................................................................9

    A.   Standard of Review................................................................9

    B.   Petitioner is not likely to succeed on the merits.............................10

    C.   This Court does not have jurisdiction over Petitioner's claims............11

D. Under the plaint text of § 1225, Petitioner must be detained pending the outcome of his removal proceedings ...............................................16

E. Congress did not intend to treat individuals who unlawfully enter the country better than those who appear at a port of entry ...................19

F. Prior agency practices are not entitled to deference under *Loper Bright*...................................................................................................20

G. The remaining *Dataphase* factors do not support a TRO ...................21

H. Irreparable Harm.......................................................................22

I. Public Interest, Balance of the Equities.........................................23

J. Petitioner's due process argument should be rejected .......................25

IV. CONCLUSION.................................................................................29

## I. INTRODUCTION

### A. Parties and Procedural Posture

Petitioner Felipe de Jesus Herandez Marcelo filed a Petition for a Writ of Habeas Corpus and a Motion for a Preliminary Injunction and Temporary Restraining Order on August 26, 2025. (ECF 1, 2.) He thereafter filed an Amended Petition and Amended Motion (ECF 12, 13), to which the below-listed Federal Respondents will refer in this Brief.

Petitioner has named the following Federal Respondents, all of whom appear to be named in their official capacities: Donald J. Trump, President of the United States; Pamela Bondi, Attorney General of the United States; Sirce Owen, Acting Director of the Executive Office for Immigration Review; Kristi Noem, Secretary of the Department of Homeland Security; Todd Lyons, Acting Director of Immigration

and Customs Enforcement ("ICE"); and Jerome Kramer, ICE's St. Paul Field Office Director. Petitioner also has named two State Respondents: Brenna Bird, Attorney General of the State of Iowa; and James Patrick Barry, the Muscatine County Attorney.

The Court has scheduled a hearing on the Motion for Preliminary Injunction and Temporary Restraining Order for Friday, September 5, 2025, at the Davenport courthouse. (ECF 7.) The Court also has ordered expedited briefing. (ECF 9.)

**B.     Pertinent Facts**

The relevant, key facts do not appear to be in dispute. Petitioner concedes that he "is a native and citizen of Mexico," who entered the United States without authorization "on an unknown date in early 2021." (Amended Petition, ¶ 28.) Petitioner says he was arrested by state authorities for a state driving offense on or about June 25, 2025, and that ICE officials issued a DHS Form I-862 ("Notice to Appear") on or about this same date. (Amended Petition, ¶ ¶ 32-33; *see also* Respondents' Exhibit 1, Declaration of Deportation Officer Jerry Lenderts (hereinafter "Lenderts Declaration"), Attachment 1, Form I-862 dated June 26, 2025.) The Form I-862 alleged that Petitioner was subject to removal proceedings under the Immigration and Nationality Act. (Id.) ICE was notified of Petitioner's arrest and issued a detainer. (Exh. A, ¶ 15.)

Petitioner appears to have remained in state custody until August 25, 2025, when he entered ICE custody. (Lenderts Declaration, Attachment 2.) As the Federal

Respondents understand it, Petitioner claims to have been in state custody under a material witness charge prior to that date.

Petitioner appeared virtually before an Immigration Judge on August 14, 2025, who denied an immigration bond hearing based on a lack of jurisdiction, citing to Section 235(b)(2)(A) of the Immigration and Nationality Act (INA) (8 U.S.C. § 1225(b)(2)(A)). (Lenderts Declaration, Attachment 4.) Petitioner says that he has appealed this determination to the Board of Immigration Appeals. (Amended Petition, ¶ 11.) As of this writing, Petitioner is scheduled for a proceeding before an Immigration Judge on September 4, 2025. (Lenderts Declaration, Attachment 5.)

## C.     Summary of the Parties' Positions

The Federal Respondents take the position that Petitioner's immigration case presents under § 1225 of Title 8, which provides for expedited removal of certain noncitizens arriving in the United States without authorization. Such noncitizens "shall be detained" for a removal proceeding under § 1225(b)(2)(A), and they are not entitled to a bond hearing. Petitioner's view appears to be that this matter should present under § 1226, which would provide the agency with authority to consider granting bond to Petitioner. *See generally Jose J.O.E. v. Bondi*, 25-cv-3051 (ECT/DJF), 2025 WL 2466670 (D. Minn. Aug. 27, 2925) (framing this issue); *Romero v. Hyde*, 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (similar).[1]

---

[1] Similar suits have been filed in other districts as well. *See Romero*, 2025 WL 2403827, at *1 (collecting cases); *see also Leal-Hernandez v. Noem*, 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025).

Petitioner also asserts a Fifth Amendment due process right to a bond hearing. (*See* Amended Motion, at 4-5.)

## II. OVERVIEW OF RELEVANT IMMIGRATION PROCESSES

### A. Legal Background for Individuals Seeking Admission into the United States

For more than a century, the immigration laws have authorized immigration officials to charge noncitizens as removable from the country, arrest noncitizens subject to removal, and detain noncitizens during their removal proceedings. *See Abel v. United States*, 362 U.S. 217, 232–35 (1960). In the INA, Congress enacted a multi-layered statutory scheme for the civil detention of noncitizens pending a decision on removal, during the administrative and judicial review of removal orders, and in preparation for removal. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. "The rule has been clear for decades: '[d]etention during deportation proceedings [i]s ... constitutionally valid.'" *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)); *see Demore*, 538 U.S. at 523 n.7 ("In fact, prior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure.").

### B. Detention under 8 U.S.C. § 1225

Section 1225 applies to "applicant[s] for admission," who are defined as "alien[s] present in the United States who [have] not been admitted" or "who arrive[]" in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of

two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)*."* *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to arriving aliens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; *see* 8 U.S.C. § 1225(b)(1)(A)(i), (iii). These noncitizens are generally subject to expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(i). But if the individual "indicates an intention to apply for asylum . . . or a fear of persecution," immigration officers will refer the alien for a credible fear interview. *Id.* § 1225(b)(1)(A)(ii). An individual "with a credible fear of persecution" is "detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). If the individual does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

Section 1225(b)(2), under which Petitioner is detained, is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at 287. It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Under § 1225(b)(2), an individual "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until

removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299). Still, the Department of Homeland Security ("DHS") has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

### C.     Detention under 8 U.S.C. § 1226(a)

Section 1226 "generally governs the process of arresting and detaining . . . aliens pending their removal." *Jennings*, 583 U.S. at 288. Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General and the Department of Homeland Security ("DHS") thus have broad discretionary authority to detain a noncitizen during removal proceedings.[2] *See* 8 U.S.C. § 1226(a)(1) (DHS "may continue to detain the arrested alien" during the pendency of removal proceedings); *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (highlighting that "subsection (a) creates

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security. The Attorney General's authority—delegated to immigration judges, *see* 8 C.F.R. § 1003.19(d)—to detain, or authorize bond for noncitizens under section 1226(a) is "one of the authorities he retains . . . although this authority is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

authority for *anyone's* arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions").

When a noncitizen is apprehended, a DHS officer makes an initial custody determination. *See* 8 C.F.R. § 236.1(c)(8). DHS "may continue to detain the arrested alien." 8 U.S.C. § 1226(a)(1). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999)).

If DHS decides to release the noncitizen, it may set a bond or place other conditions on release. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8). If DHS determines that a noncitizen should remain detained during the pendency of his removal proceedings, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d). The immigration judge then conducts a bond hearing and decides whether to release the noncitizen, based on a variety of factors that account for the noncitizen's ties to the United States and evaluate whether the noncitizen poses a flight risk or danger to the community. *See Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006);[3] *see also* 8 C.F.R. § 1003.19(d) ("The

---

[3] The BIA has identified the following non-exhaustive list of factors the immigration judge may consider: "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any

determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or [DHS].").

Section 1226(a) does not provide a noncitizen with a right to release on bond. *See Guerra*, 24 I. & N. Dec. at 39 (citing *Carlson*, 342 U.S. at 534). The burden rests with the noncitizen seeking release. *Id.* If, after the bond hearing, either party disagrees with the decision of the immigration judge, that party may appeal that decision to the BIA. *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1003.38, 1236.1(d)(3).

Included within the Attorney General and DHS's discretionary authority are limitations on the delegation to the immigration court. Under 8 C.F.R. § 1003.19(h)(2)(i)(B), the immigration judge does not have authority to redetermine the conditions of custody imposed by DHS for any arriving alien. The regulations also include a provision that allows DHS to invoke an automatic stay of any decision by an immigration judge to release an individual on bond when DHS files an appeal of the custody redetermination. 8 C.F.R. § 1003.19(i)(2) ("The decision whether or not to file [an automatic stay] is subject to the discretion of the Secretary.").

### III. ARGUMENT

#### A. Standard of Review

The purpose of a preliminary injunction or a temporary restraining order "'is merely to preserve the relative positions of the parties'" until the case can be resolved.

---

attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Guerra*, 24 I. & N. Dec. at 40.

*Univ. of Tex. v. Komenich*, 451 U.S. 390, 395 (1981).[4] The burden on the party moving for the temporary restraining order is great because injunctive relief is "an extraordinary remedy never awarded as a right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court may grant a preliminary injunction only upon a proper showing of (1) the probability of success on the merits, (2) that the movant will suffer irreparable harm absent the injunction, (3) the balance between this harm and the harm an injunction would cause other parties, and (4) where the public interest lies. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc). The movant bears the burden of proof for each factor. *Gelco v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). This stringent burden is even higher on a party such as Petitioner that seeks a mandatory preliminary injunction—one which "alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo." *TruStone Fin. Fed. Credit Union v. Fiserv, Inc.*, No. 14-CV-424 (SRN/SER), 2014 WL 12603061, at *1 (D. Minn. Feb. 24, 2014) (citation omitted). "Mandatory preliminary injunctions are to be cautiously viewed and sparingly used." *Id.* (citation omitted).

**B.    Petitioner is not likely to succeed on the merits.**

In analyzing a motion for injunctive relief, the likelihood of success on the merits is "[t]he most important of the Dataphase factors." *Shrink Mo. Gov't PAC v. Adams*, 151F.3d 763, 764 (8th Cir. 1998).

---

[4] The same legal standard applies to both a request for a temporary restraining order or a preliminary injunction. *Izabella HMC-MF, LLC v. Radisson Hotels Int'l, Inc.*, 378 F. Supp. 3d 775, 778 n.2 (D. Minn. 2019).

## C. This Court does not have jurisdiction over Petitioner's claims.

As a threshold matter, 8 U.S.C. §§ 1252(g) and (b)(9) preclude review of Petitioner's claims. Accordingly, Petitioner is unable to show a likelihood of success on the merits. *But see Jose J.O.E.*, 2025 WL 2466670, at **5-6 (rejecting Government's jurisdictional and exhaustion of remedies arguments); *Romero*, 2025 WL 2403827, at **4-6 (similar).

*First,* Section 1252(g) specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title."[5] Except as provided in § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021).

Section 1252(g) also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal

---

[5] Congress initially passed § 1252(g) in the IIRIRA, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311.

proceedings, including the decision to detain an alien pending removal. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take [plaintiff] into custody and to detain him during removal proceedings").

Petitioner's claim stems from his detention during removal proceedings. That detention arises from the decision to commence such proceedings against him. *See, e.g.*, *Valencia-Mejia v. United States*, No. CV 08–2943 CAS (PJWx), 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008) ("The decision to detain plaintiff until his hearing before the Immigration Judge arose from this decision to commence proceedings[.]"); *Wang v. United States*, No. CV 10-0389 SVW (RCx), 2010 WL 11463156, at *6 (C.D. Cal. Aug. 18, 2010); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298–99 (3d Cir. 2020) (holding that 8 U.S.C. § 1252(g) and (b)(9) deprive district court of jurisdiction to review action to execute removal order).

As other courts have held, "[f]or the purposes of § 1252, the Attorney General commences proceedings against an alien when the alien is issued a Notice to Appear before an immigration court." *Herrera-Correra v. United States*, No. CV 08-2941 DSF (JCx), 2008 WL 11336833, at *3 (C.D. Cal. Sept. 11, 2008). "The Attorney General may arrest the alien against whom proceedings are commenced and detain that individual until the conclusion of those proceedings." *Id.* at *3. "Thus, an alien's detention throughout this process arises from the Attorney General's decision to commence proceedings" and review of claims arising from such detention is barred

under § 1252(g). *Id.* (citing *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007)); *Wang*, 2010 WL 11463156, at *6; 8 U.S.C. § 1252(g). As such, judicial review of the claim that he is entitled to bond is barred by § 1252(g). The Court should dismiss for lack of jurisdiction.

*Second,* under § 1252(b)(9), "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of all [claims arising from deportation proceedings]" to a court of appeals in the first instance. *Id.*; *see Lopez v. Barr*, No. CV 20-1330 (JRT/BRT), 2021 WL 195523, at *2 (D. Minn. Jan. 20, 2021) (citing *Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020)).

Moreover, § 1252(a)(5) provides that a petition for review is the exclusive means for judicial review of immigration proceedings:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

8 U.S.C. § 1252(a)(5). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be

reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see id.* at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings").

Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("[J]urisdiction to review such claims is vested exclusively in the courts of appeals[.]"). The petition-for-review process before the court of appeals ensures that aliens have a proper forum for claims arising from their immigration proceedings and "receive their day in court." *J.E.F.M.*, 837 F.3d at 1031 (internal quotations omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

In evaluating the reach of subsections (a)(5) and (b)(9), the Second Circuit explained that jurisdiction turns on the substance of the relief sought. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Those provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including

decisions to detain for purposes of removal or for proceedings. *See Jennings*, 583 U.S. at 294–95 (section 1252(b)(9) includes challenges to the "decision to detain [an alien] in the first place or to seek removal[.]"). Here, Petitioner challenges the government's decision and action to detain him, which arises from DHS's decision to commence removal proceedings against him as an arriving alien and is thus an "action taken . . . to remove [him] from the United States." *See* 8 U.S.C. § 1252(b)(9); *see also, e.g.*, *Jennings*, 583 U.S. at 294–95; *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that 8 U.S.C. § 1226(e) did not bar review in that case because the petitioner did not challenge "his initial detention"); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (recognizing that there is no judicial review of the threshold detention decision, which flows from the government's decision to "commence proceedings"). As such, the Court lacks jurisdiction over this action.

The reasoning in *Jennings* outlines why Petitioner's claims are unreviewable here. While holding that it was unnecessary to comprehensively address the scope of § 1252(b)(9), the Supreme Court in *Jennings* also provided guidance on the types of challenges that may fall within the scope of § 1252(b)(9). *See Jennings*, 583 U.S. at 293–94. The Court found that "§1252(b)(9) [did] not present a jurisdictional bar" in situations where "respondents . . . [were] not challenging the decision to detain them in the first place." *Id.* at 294–95. Here, the thrust of Petitioner's claim is a challenge to the government's decision to detain him in the first place. Thus, the Court should dismiss the Petition for lack of jurisdiction under § 1252(b)(9). Petitioner must

present his claims before the appropriate federal court of appeals because they challenge the government's decision or action to detain him, which must be raised before a court of appeals, not this Court. *See* 8 U.S.C. § 1252(b)(9).

### D. Under the plain text of § 1225, Petitioner must be detained pending the outcome of his removal proceedings.

The Court should reject Petitioner's argument that § 1226(a) governs his detention instead of § 1225. When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017); *see also Hickman v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44, 48 (8th Cir. 1977); *In re Bender*, 338 B.R. 62, 69 (Bankr. W.D. Mo. 2006). Section 1226(a) applies to aliens "arrested and detained pending a decision" on removal. 8 U.S.C. § 1226(a); in contrast, § 1225 is narrower. *See* 8 U.S.C. § 1225. It applies only to "applicants for admission"; that is, as relevant here, aliens present in the United States who have not be admitted. *See id.; see also Florida v. United States,* 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023). Because Petitioner falls within that category, the specific detention authority under § 1225 governs over the general authority found at § 1226(a).

Applying this reasoning, the United States District Court for the District of Massachusetts recently confirmed in a habeas action that an unlawfully present alien, who had been unlawfully present in the country for approximately 20 years, was nonetheless an "applicant for admission" upon the straightforward application of the statute. *See Webert Alvarenga Pena, Petitioner, v. Patricia Hyde, et al., Respondents.*, No. CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025).

The court explained this resulted in the "continued detention" of an alien during removal proceedings as commanded by statute. *Id.; but see Jose J.O.E.*, 2025 WL 2466670, at *8 (rejecting government's position because petitioner was arrested on a warrant under § 1226); *Romero*, 2025 WL 2403827, at **9-10 (rejecting government's position that petitioner was an "applicant for admission" under § 1225).

Under 8 U.S.C. § 1225(a), an "applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(2)—the provision relevant here—is the "broader" of the two. *Id.* It "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id.* And § 1225(b)(2) mandates detention. *Id.* at 297; *see also* 8 U.S.C. § 1225(b)(2); *Matter of Q. Li,* 29 I & N. Dec. at 69 ("[A]n applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)."). Section 1225(b) therefore applies because Petitioner is present in the United States without being admitted.

Petitioner's argument that he should be treated differently because he has been in the interior of the United States is unpersuasive. The BIA has long recognized that "many people who are not *actually* requesting permission to enter the

United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 (BIA 2012). Statutory language "is known by the company it keeps." *McDonnell v. United States*, 579 U.S. 550, 569 (2016). The phrase "seeking admission" in § 1225(b)(2)(A) must be read in the context of the definition of "applicant for admission" in § 1225(a)(1). Applicants for admission are both those individuals present without admission and those who arrive in the United States. *See* 8 U.S.C. § 1225(a)(1). Both are understood to be "seeking admission" under §1225(a)(1). *See Lemus-Losa*, 25 I. & N. Dec. at 743. Congress made that clear in § 1225(a)(3), which requires all aliens "who are applicants for admission or otherwise seeking admission" to be inspected by immigration officers. 8 U.S.C. § 1225(a)(3). The word "or" here "introduce[s] an appositive–a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')." *United States v. Woods*, 571 U.S. 31, 45 (2013).

Petitioner's interpretation also reads "applicant for admission" out of § 1225(b)(2)(A). One of the most basic interpretative canons instructs that a "statute should be construed so that effect is given to all its provisions." *See Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Petitioner's interpretation fails that test. It renders the phase "applicant for admission" in § 1225(b)(2)(A) "inoperative or superfluous, void or insignificant." *See id.* If Congress did not want § 1225(b)(2)(A) to apply to "applicants for admission," then it would not have included that phrase in the subsection. *See* 8 U.S.C. § 1225(b)(2)(A); *see also Corley*, 556 U.S. at 314.

The court's decision in *Florida v. United States* is instructive here. The district court held that 8 U.S.C. § 1225(b) mandates detention of applicants for admission throughout removal proceedings, rejecting the assertion that DHS has discretion to choose to detain an applicant for admission under either section 1225(b) or 1226(a). 660 F. Supp. 3d at 1275. The court held that such discretion "would render mandatory detention under § 1225(b) meaningless. Indeed, the 1996 expansion of § 1225(b) to include illegal border crossers would make little sense if DHS retained discretion to apply § 1225(a) and release illegal border crossers whenever the agency saw fit." *Id.* The court pointed to *Demore v. Kim,* 538 U.S. 510, 518 (2003), in which the Supreme Court explained that "wholesale failure" by the federal government motivated the 1996 amendments to the INA. *Florida*, 660 F. Supp. 3d at 1275. The court also relied on, *Matter of M-S-,* 27 I&N Dec. 509, 516 (A.G. 2019), in which the Attorney General explained "section [1225] (under which detention is mandatory) and section [1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." *Florida*, 660 F. Supp. 3d at 1275.

**E.    Congress did not intend to treat individuals who unlawfully enter the country better than those who appear at a port of entry.**

When the plain text of a statute is clear, that meaning is controlling and courts "need not examine legislative history." *Missouri ex rel. Koster v. Portfolio Recovery Associates, Inc.*, 686 F. Supp.2d 942, 947 n.3 (E.D. Mo. 2010). But to the extent legislative history is relevant here, nothing "refutes the plain language" of § 1225. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). Congress

passed IIRIRA to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225). The Court should reject the Petitioner's interpretation because it would put aliens who "crossed the border unlawfully" in a better position than those "who present themselves for inspection at a port of entry." *Id.* Aliens who presented at port of entry would be subject to mandatory detention under § 1225, but those who crossed illegally would be eligible for a bond under § 1226(a).[6]

### F. Prior agency practices are not entitled to deference under *Loper Bright*.

Prior agency practice carries little, if any, weight under *Loper Bright*. The weight given to agency interpretations "must always 'depend upon their

---

[6] Nothing in the Laken Riley Act ("LRA") changes the analysis. Redundancies in statutory drafting are "common . . . sometimes in a congressional effort to be doubly sure." *Barton v. Barr*, 590 U.S. 222, 239 (2020). The LRA arose after an inadmissible alien "was paroled into this country through a shocking abuse of that power." 171 Cong. Rec. H278 (daily ed. Jan 22, 2025) (statement of Rep. McClintock). Congress passed it out of concern that the executive branch "ignore[d] its fundamental duty under the Constitution to defend its citizens." *Id.* at H269 (statement of Rep. Roy). One member even expressed frustration that "every illegal alien is currently required to be detained by current law throughout the pendency of their asylum claims." *Id.* at H278 (statement of Rep. McClintock). The LRA reflects a "congressional effort to be doubly sure" that such unlawful aliens are detained. *Barton*, 590 U.S. at 239.

thoroughness, the validity of their reasoning, the consistency with earlier and later pronouncements, and all those factors which give them power to persuade.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (cleaned up)). And here, the agency provided no analysis to support its reasoning. *See* 62 Fed. Reg. at 10323; *see also Maldonado v. Bostock*, No. 2:23-cv-00760-LK-BAT, 2023 WL 5804021, at *3, 4 (W.D. Wash. Aug. 8, 2023) (noting the agency provided "no authority" to support its reading of the statute).

To be sure, "when the best reading of the statute is that it delegates discretionary authority to an agency," the Court must "independently interpret the statute and effectuate the will of Congress." *Loper Bright*, 603 U.S. at 395 (cleaned up). But "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention for applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. Petitioner thus cannot show a likelihood of success on the merits.

## G. The remaining *Dataphase* factors do not support a TRO.

This Court should deny Petitioner's motion because he has not established sufficient irreparable harm, and the public interest and balance of the equities favor the United States' position. As a threshold matter, the Court need not even reach these factors, given Petitioner's failure to show a likelihood of success on the merits. *See Devisme v. City of Duluth*, No. 21-CV-1195 (WMW/LIB), 2022 WL 507391, at *4 (D. Minn. Feb. 18, 2022) ("Because Devisme has not demonstrated a likelihood of success on the merits, the Court need not address the remaining *Dataphase* factors."). But even if the Court were to consider the other factors, Petitioner's claim fails.

## H.     Irreparable Harm

Regardless of the merits his or her claims, a plaintiff must show "that irreparable injury is likely in the absence of an injunction." *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016). To be considered "irreparable," a plaintiff must show that absent granting the preliminary relief, the injury will be "'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The significance of the alleged harm is also relevant to a court's determination of whether to grant injunctive relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."); *E.B. v. Dep't of State*, 422 F. Supp. 3d 81, 88 (D.D.C. 2019) ("While 'there is some appeal to the proposition that any damage, however slight, which cannot be made whole at a later time, should justify injunctive relief,' the Court cannot ignore that 'some concept of magnitude of injury is implicit in the [preliminary injunction] standards.'") (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981)). Here, Petitioner can pursue his administrative remedies before the BIA and, ultimately, to the Eighth Circuit Court of Appeals. He cannot show irreparable harm.

## I.    Public Interest, Balance of the Equities

The two remaining *Dataphase* factors—the public interest and the balance of harms—also weigh against injunctive relief. "For practical purposes, these factors 'merge' when a plaintiff seeks injunctive relief against the government." *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 888 (D. Minn. 2021).

Under the balance of harms factor, "[t]he goal is to assess the harm the movant would suffer absent an injunction, as well as the harm other interested parties and the public would experience if the injunction issued." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 875 (D. Minn. 2015) (citing *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994)). When balancing the harms, courts will also consider whether a proposed injunction would alter the status quo, finding that such proposals weigh against injunctive relief. *See, e.g., Katch, LLC*, 143 F. Supp. 3d at 875; *Amigo Gift Ass'n v. Exec. Props., Ltd.*, 588 F. Supp. 654, 660 (W.D. Mo. 1984) ("[B]ecause Amigo is not seeking the mere preservation of the status quo but rather is asking the Court to drastically alter the status quo pending a resolution of the merits, the Court finds that the balance of the equities tips decidedly in favor of Executive Properties.").

Importantly, the Court must take into consideration the public consequences of injunctive relief against the government. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (cautioning that the Court "should pay particular regard for the public consequences" of injunctive relief). The government has a compelling interest in the steady enforcement of its immigration laws. *See Miranda v. Garland*, 34 F.4th 338,

365–66 (4th Cir. 2022) (vacating an injunction that required a "broad change" in immigration bond procedure); *Ubiquity Press Inc. v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) ("the public interest in the United States' enforcement of its immigration laws is high"); *United States v. Arango*, CV 09-178 TUC DCB, 2015 WL 11120855, at 2 (D. Ariz. Jan. 7, 2015) ("the Government's interest in enforcing immigration laws is enormous.").

Judicial intervention would only disrupt the status quo. *See, e.g.*, *Slaughter v. White*, No. C16-1067-RSM-JPD, 2017 WL 7360411, at * 2 (W.D. Wash. Nov. 2, 2017) ("[T]he purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits."). The Court should avoid a path that "inject[s] a degree of uncertainty" in the process. *USA Farm Labor, Inc. v. Su*, 694 F. Supp. 3d 693, 714 (W.D.N.C. 2023). The BIA exists to resolve disputes like the one regarding Petitioner's detention. *See* 8 C.F.R. § 1003.1(d)(1). By regulation it must "provide clear and uniform guidance" "through precedent decisions" to "DHS [and] immigration judges." *Id.* The Federal Respondents respectfully ask that the Court allow the established process to continue without disruption.

The BIA also has an "institutional interest" to protect its "administrative agency authority." *See McCarthy v. Madigan*, 503 U.S. 140, 145, 146 (1992) *superseded by statute as recognized in Porter v. Nussle*, 534 U.S. 516 (2002). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the

benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Global Rescue Jets, LLC v. Kaiser Foundation Health Plan, Inc.*, 30 F.4th 905, 913 (9th Cir. 2022) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Indeed, "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy*, 503 U.S. at 145. The Court should allow the BIA the opportunity to weigh in on these issues raised in Petitioner's appeal—which are the same issues raised in this action. *See id.*

**J.      Petitioner's due process argument should be rejected.**

Even if the Federal Defendants are right on the question of statutory interpretation, Petitioner appears to argue that he is still entitled to an immigration bond hearing under the due process clause of the Fifth Amendment.  Petitioner is wrong. *But see Make the Road New York v. Noem*, 24-cv-190 (JMC), Memorandum Opinion (D.D.C. Aug. 29, 2025) (concluding that noncitizens residing in the interior of the United States cannot be subject to expedited removal).[7]

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (citation omitted).  Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has

---

[7] *Make the Road New York* is not yet available on Westlaw, but the district court's 48-page opinion is publicly available on the web site for the United States District Court for the District of Columbia.  *See* https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2025cv0190-64.

no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (citation omitted), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination," *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020).

As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country." *Thuraissigiam*, 591 U.S. at 139.

Stated further, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Supreme Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" because by statute, such individuals are also defined as applicants for admission. *Id.* at 139-40. Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location" and therefore the Supreme Court rejected the argument that an individual who "succeeded in making it 25 yards into U.S. territory before he was caught" should be entitled to additional constitutional protections. *Id.* at 139.

Instead, applying the "century-old rule regarding the due process rights of an alien seeking initial entry[,]" the Court explained that aliens arrested after crossing the border illegally, such as Petitioner, have "only those rights regarding admission that Congress has provided by statute." *Id.* at 139-40. The Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if he fears return to his home country and also seek parole from the agency. *Id.* at 140.

The Supreme Court's decision in *Thuraissigiam* is instructive. In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally. 591 U.S. at 139. DHS detained and processed him for expedited removal because he lacked valid entry

documents. *Id.* at 114. An asylum officer then determined that Mr. Thuraissigiam lacked a credible fear of persecution. *Id.* Mr. Thuraissigiam petitioned for a writ of habeas corpus, asserting a fear of persecution and requesting another opportunity to apply for asylum. *Id.*

In its decision, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court explained that for such aliens stopped at the border, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that *Thuraissigiam*'s due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides.").

In short, because Petitioner is an inadmissible applicant for admission seeking initial entry into this country, he therefore "requests a privilege and has no constitutional rights regarding his application[.]"[8] *See Landon*, 459 U.S. at 32; *United States ex rel Knauff*, 338 U.S. at 542 ("At the outset we wish to point out that an alien who seeks admission to this country may not do so under any claim of right.").

---

[8] It is well-settled that "an alien who tries to enter the country illegally is treated as an 'applicant for admission,' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *Thuraissigiam*, 591 U.S. at 140. Petitioner indisputably falls within this category and is an applicant for admission treated at the threshold of entry.

Instead, Petitioner has "only those rights regarding admission that Congress has provided by statute." *See Thuraissigiam*, 591 U.S. at 140. That is, Petitioner is entitled only to the protections set forth by statute and "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140; *cf. Guzman v. Tippy*, 130 F.3d 64, 66 (2d Cir. 1997) (the rights of excluded aliens "are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment").

## IV. CONCLUSION

Petitioner's request for a Temporary Restraining Order and a Preliminary Injunction should be denied, and the Court should dismiss his Petition for a Writ of Habeas Corpus.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:     */s/ Andrew H. Kahl*
Andrew H. Kahl
First Assistant United States Attorney
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, IA 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Andrew.Kahl@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
____U.S. Mail ____ Fax ___Hand Delivery
__X__ECF/Electronic filing ___Other means
UNITED STATES ATTORNEY
By: */s/ Karen Saltos*
      Paralegal Specialist