IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| FELIPE DE JESUS HERNANDEZ MARCELO,<br><br>     Petitioner,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, in her official capacity as Attorney General of the United States; SIRCE OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; JEROME KRAMER, in his official capacity as St. Paul Field Office Director; BRENNA BIRD, in her official capacity as Iowa Attorney General; and JAMES BARRY, in his official capacity as Muscatine County Attorney,<br><br>     Respondents. | No. 3:25-cv-00094-RGE-WPK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S AMENDED MOTION FOR PRELIMINARY INJUNCTION** |

## I.    INTRODUCTION

Petitioner Felipe de Jesus Hernandez Marcelo requests a preliminary injunction and temporary restraining order against Federal[1] and State[2] Respondents. Hernandez Marcelo is currently in federal custody pursuant to immigration proceedings. Hernandez Marcelo moves for a preliminary injunction requiring Federal Respondents to enter an order releasing him from

---

[1] The Court refers to Respondents Donald J. Trump, Pamela Bondi, Sirce Owen, Kristi Noem, Todd Lyons, and Jerome Kramer as "Federal Respondents" throughout its Order.

[2] The Court refers to Respondents Brenna Bird and James Barry as "State Respondents" throughout its Order.

detention, or, in the alternative, to hold a bond hearing. Pet'r's Am. Mot. Prelim. Inj. 9, ECF No. 13; *see* Pet'r's Am. Pet. Writ Habeas Corpus ¶ 28, ECF No. 12. He also requests the Court enjoin Federal Respondents from pursuing an automatic stay against him. *Id.* Hernandez Marcelo moves for a preliminary injunction requiring State Respondents to abstain from filing any new material witness charges against him and to inform his counsel of any criminal charges filed against him. *Id.*[3]

The Court concludes Hernandez Marcelo has met his burden to show he is entitled to a preliminary injunction as to the bond hearing requested of Federal Respondents. Applying the *Dataphase* factors, a preliminary injunction requiring a bond hearing is warranted. *See Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Because Hernandez Marcelo is not likely to succeed on the merits of his claim against State Respondents, the Court finds no injunction as to State Respondents is warranted. *Id.* Thus, the Court grants in part Hernandez Marcelo's motion for a preliminary injunction as to Federal Respondents and denies Hernandez Marcelo's motion for a preliminary injunction as to State Respondents.

## II.    BACKGROUND

The limited purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the Court's findings of fact and conclusions of law in this order are not binding at trial. *See id.*

Hernandez Marcelo is a native and citizen of Mexico who entered the United States "without admission or parole on an unknown date in early 2021." ECF No. 12 ¶ 28.

---

[3] Hernandez Marcelo also requests a temporary restraining order, which is no longer at issue as the Respondents have been served and heard on the issue of interim relief. *Cf.* Fed. R. Civ. P. 65(b).

On June 21, 2025, Hernandez Marcelo was the victim of an attempted carjacking. *Id.* ¶ 29. He was shot during the incident and suffered injuries. *Id.* Hernandez Marcelo underwent emergency surgery at University of Iowa Hospitals and Clinics and spent a few days recovering in the hospital. *Id.* Due to his continued detention, he has missed medical and physical rehabilitation appointments to address the injuries suffered during the attempted carjacking. ECF No. 13 at 8.

One day after being released from the hospital, Hernandez Marcelo attempted to recover his car and belongings from the Muscatine Public Safety Building. *Id.* ¶ 31; State Resp't's Br. Supp. Resist. Pet'r's Am. Mot. Prelim. Inj. 4, ECF No. 21. There, Muscatine Police Department officers arrested him pursuant to a warrant for driving under suspension. ECF No. 12 ¶ 32; Pet'r's Ex. M Supp. Mot. Prelim. Inj. 1, ECF No. 3-4.

The next day, the United States Department of Homeland Security (DHS) issued an I-200 Warrant for Arrest of an Alien, I-862 Notice to Appear in Immigration Court, and an I-286 Notice of Custody Determination for Hernandez Marcelo, alleging he is a removable alien. Pet'r's Exs. A–C Supp. Mot. Prelim. Inj. 1–5, ECF No. 3-1.[4] The Notice of Custody Determination stated Hernandez Marcelo was being detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act" and related regulations. *Id.* at 5. Immigrations and Customs Enforcement (ICE) then issued a detainer for Hernandez Marcelo. Fed. Resp't's Ex. 1 Supp. Resist. Pet'r's Am. Mot. Prelim. Inj. ¶ 15, ECF No. 20-1.

On July 2, 2025, the State of Iowa filed a criminal complaint against two individuals related to Hernandez Marcelo's carjacking. ECF No. 21 at 5; State Resp't's Ex. 101 Supp. Resist. Pet'r's Am. Mot. Prelim. Inj. ¶ 15, ECF No. 26-1. The state district court issued a writ of habeas corpus ad testificandum for Hernandez Marcelo to ensure he remained in the country and available to

---

[4] The relevant statutes refer to noncitizens as aliens. The Court uses the term "noncitizen" instead of "alien," unless quoting statutory language.

testify at defendants' trial. ECF No. 21 at 5; State Resp't's Ex. 102 Supp. Resist. Pet'r's Am. Mot. Prelim. Inj. ¶ 13-14, ECF No. 26-2. DHS subsequently ordered Hernandez Marcelo released to Muscatine County on the habeas writ and reinstated its federal detainer. ECF No. 21 at 5; State Resp't's Ex. 103 Supp. Resist. Pet'r's Am. Mot. Prelim. Inj. ¶ 9, ECF No. 26-3. About a week later, the State filed a material witness complaint against Hernandez Marcelo, alleging he would not be available to accept service of a subpoena due to his immigration status. Pet'r's Ex. Z Supp. Mot. Prelim. Inj. 38, ECF No. 3-4. The state district court issued a material witness warrant. Pet'r's Ex. AA Supp. Mot. Prelim. Inj. 39–40, ECF No. 3-4.

Due to a miscommunication with an ICE officer, Hernandez Marcelo was unable to attend his scheduled immigration bond hearing via video conference on July 24, 2025. ECF No. 21 at 6; *see* ECF No. 12 ¶¶ 37–38. The presiding Immigration Judge continued his bond hearing until August 14, 2025. ECF No. 12 ¶ 38. On that date, the Immigration Judge determined the Executive Office of Immigration Review (EOIR) lacked jurisdiction to make a custody determination or set bond for Hernandez Marcelo. The reasoning in its entirety stated "[n]o jurisdiction— 235(b)(2)(A)." Pet'r's Ex. I Supp. Mot. Prelim. Inj. 35–36, ECF No. 3-3. Hernandez Marcelo appealed this determination to the Board of Immigration Appeals. ECF No. 12 ¶ 55; Pet'r's Ex. L Supp. Mot. Prelim. Inj. 45–47, ECF No. 3-3. On September 3, 2025, the Immigration Judge issued a bond memorandum further detailing the Court's reasoning for declining jurisdiction pursuant to the Immigration and Nationality Act § 212(a)(6)(A)(i). Fed. Resp't's Ex. 2 Supp. Resist. Pet'r's Am. Mot. Prelim. Inj., ECF No. 33-2.

On August 25, 2025, Hernandez Marcelo's counsel filed a motion to dismiss his material witness complaint in state court. Pet'r's Ex. FF Supp. Mot. Prelim. Inj. 46–48, ECF No. 3-4. Respondent Barry also moved to dismiss the material witness complaint. Pet'r's Ex. GG Supp. Mot. Prelim. Inj. 49, ECF No. 3-4. The state district court dismissed the matter with prejudice.

Pet'r's Ex. HH Supp. Mot. Prelim. Inj. 50–51, ECF No. 3-4.

Hernandez Marcelo now moves for an emergency motion for preliminary injunction seeking relief from both Federal and State Respondents. ECF No. 13 at 9; *see* ECF No. 12 ¶ 69. He requests the Court find he is being detained under the discretionary detention framework of 8 U.S.C. § 1226 and order Federal Respondents to release him under 8 U.S.C. § 1226(a)(2)(B) or hold a bond hearing under 8 U.S.C. § 1226(a). *Id.* Hernandez Marcelo also requests the Court enjoin State Respondents from filing any new material witness charges against him and notify counsel if state criminal charges are filed. *Id.* Federal Respondents resist, contending Marcelo Hernandez is being held under the mandatory detention framework of 8 U.S.C. § 1225. Fed. Resp't's Br. Supp. Resist. Pet'r's Am. Mot. Prelim. Inj. 4, ECF No. 25. State Respondents resist, arguing Hernandez Marcelo has not exhausted a challenge to his future custody in state court and the claim is currently moot. ECF No. 21 at 11–16. State Respondents also request the Court dismiss Hernandez Marcelo's claims. *Id.* at 18–19.[5]

Counsel appeared for a motion hearing on September 5, 2025. Mot. Prelim. Inj. Hr'g Mins., ECF No. 33. Evidence admitted without objection included DHS warrants, notices, and orders regarding Hernandez Marcelo's immigration status; filings from Hernandez Marcelo's EOIR proceedings; Hernandez Marcelo's medical information; letters in support of Hernandez Marcelo; filings from State of Iowa proceedings; declarations from State police and jail personnel; and declarations from deportation officers. *See id.* Federal Respondents provided a Bond Memorandum detailing the Immigration Judge's reasoning for finding a lack of jurisdiction in Hernandez Marcelo's case. *See* Mot. Prelim. Inj. Ex. List, ECF No. 33-2. Hernandez Marcelo and his mother testified. ECF No. 33. Upon review of the arguments and evidence, the Court issued an

---

[5] The Court will not consider State Respondents' request for dismissal raised in a resistance. *Cf.* LR 7(e). Further, the request is moot.

oral ruling granting in part Hernandez Marcelo's preliminary injunction against Federal Respondents as to a bond hearing. ECF No. 33 at 1.

While the motion hearing was in progress, the Board of Immigration Appeals issued a decision determining Immigration Judges lack authority to hear bond requests for noncitizens present in the United States without admission. Fed. Resp't's Ex. A. Supp. Notice Suppl. Authority, ECF No. 34-1. Subsequently, Federal Respondents filed a Notice of Supplemental Authority notifying the Court of the Board of Immigration Appeals' determination. Fed. Resp't's Notice Suppl. Authority, ECF No. 34. Pursuant to the Board of Immigration Appeals' determination, Federal Respondents requested the Court reconsider its oral ruling granting Hernandez Marcelo's preliminary injunction as to a bond hearing. *Id.* at 2. Hernandez Marcelo replied, arguing the Board of Immigration Appeals' decision does not bind the Court and does not provide persuasive legal justification beyond Federal Respondents' previous arguments. Pet'r's Resp. Fed. Resp't's Notice Suppl. Authority 2, ECF No. 35. The issue before the Court is whether Hernandez Marcelo has met his burden to show the necessity of a preliminary injunction. The Court sets out additional facts as necessary below.

## III.    LEGAL STANDARD

*Dataphase* articulates four factors the Court considers when determining whether to issue a preliminary injunction: 1) "the probability the movant will succeed on the merits"; 2) "the threat of irreparable harm to the movant"; 3) "the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant"; and 4) "the public interest." *Dataphase*, 640 F.2d at 113; *see also Sports Design & Dev., Inc. v. Schoneboom*, 871 F. Supp. 1158, 1162–63 (N.D. Iowa 1995) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)). When a plaintiff seeks to restrain governmental action, the public interest and balancing of harm factors largely merge. *See Eggers v. Evnen*, 48 F.4th 561,

564 (8th Cir. 2022). Ultimately, the Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1989) (citation omitted).

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). "When determining the likelihood of [Petitioner's] success on the merits, [the Court does] not have to decide whether [Petitioner] will ultimately win, [but a]n injunction cannot issue if there is no chance of success on the merits." *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (cleaned up) (citations omitted). Further "[Petitioner] does not need to prove a greater than fifty per cent likelihood that [he] will prevail on the merits." *Id.* at 1044–45 (citation omitted). But Petitioner "must . . . show a 'fair chance of prevailing.'" *Id.* at 1045 (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). When a petitioner asserts multiple claims and seeks preliminary relief, "[t]he [petitioner] need only establish a likelihood of succeeding on the merits of any one of [his] claims." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (internal quotation marks and citation omitted).

## IV. DISCUSSION

Application of the *Dataphase* factors is not a "rigid formula." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999). "No single factor in itself is dispositive; in each case all the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Calvin Klein Cosms. Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987). Nevertheless, likelihood of success on the merits is the most significant factor. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).

The Court considers each *Dataphase* factor, starting with the most significator factor: Hernandez Marcelo's likelihood of success on the merits of his claims. The Court concludes each *Dataphase* factor weighs in favor of granting the motion for a preliminary injunction against Federal Respondents as to a bond hearing.

## A.    Likelihood of Success on the Merits

Hernandez Marcelo's likelihood of success on the merits is the most significant *Dataphase* factor the Court considers when evaluating whether to grant a preliminary injunction. *Cf. Home Instead*, 721 F.3d at 497. Because Hernandez Marcelo requests separate relief from Federal Respondents and State Respondents, the Court considers the likelihood of success on the merits as to each group of respondents separately.

### 1.    Federal Respondents

#### a.    Jurisdiction

Federal Respondents argue the Court lacks jurisdiction to hear Hernandez Marcelo's claims under 8 U.S.C. § 1252(g) and (b)(9). ECF No. 25 at 11–16. The Court concurs with the courts across the country that have concluded § 1252(g) and (b)(9) do not deprive the Court of jurisdiction in this matter. *See, e.g., Jose J.O.E. v. Bondi,* No. 25-CV-3051, 2025 WL 2466670, at *6–7 (D. Minn. Aug. 27, 2025); *Romero v. Hyde,* No. CV 25-11631-BEM, 2025 WL 2403827, at *4–5 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson,* No. 25-CV-3142, 2025 WL 2374411, at *4–8 (D. Minn. Aug. 15, 2025).

Section 1252(g) is a jurisdiction-stripping provision divesting courts of the power to hear cases in a limited set of circumstances. In relevant part, 8 U.S.C. § 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

>decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Section 1252(g) is a "narrow" jurisdictional bar that "applies only to three discrete actions that the Attorney General make take," not all actions taken as part of the deportation process. *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999); *see Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018) ("We did not interpret [8 U.S.C. § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). Section 1252(g)'s narrow jurisdictional bar applies *only* to the three specific situations enumerated in the statutory language: the Attorney General's decision or action to 1) commence proceedings, 2) adjudicate cases, or 3) execute removal orders. *Reno,* 525 U.S. at 482; 8 U.S.C. § 1252(g). Hernandez Marcelo's claims fall outside § 1252(g)'s narrow jurisdictional bar. He does not challenge commencement of proceedings, the adjudication of his case, or the execution of a removal order. Rather, Hernandez Marcelo challenges his detention without a bond hearing. Pet'r's Reply Supp. Am. Mot. Prelim. Inj. 3, ECF No. 31.

Federal Respondents also argue § 1252(g) bars the Court from hearing challenges to the method by which the Secretary of Homeland Security chooses to commence removal proceedings, which includes the decision to detain a noncitizen pending removal. ECF No. 25 at 11–13. This argument does not comport with the narrow construction of § 1252(g) affirmed by the Supreme Court. *See Jennings,* 583 U.S. at 294. The majority in *Jennings* specifically declined to support Justice Thomas's concurrence, which tracked Respondents' argument in this case. *Id* at 295 n.3 ("The concurrence contends that 'detention is an "action taken . . . to remove" an alien' and that therefore 'even the narrowest reading of "arising from" must cover' the claims raised by respondents. We do not follow this logic."). Put simply, detention of a noncitizen pending removal

does not "arise from" the Attorney General's decision to commence proceedings against an alien. Hernandez Marcelo's claim is not barred by § 1252(g) because he challenges his detention without a bond hearing, not the "method" by which the Secretary of Homeland Security chose to commence removal proceedings against him.

The Eighth Circuit has also carved out an exception to § 1252(g) for habeas claims raising a pure question of law. *Silva v. United States,* 866 F.3d 938, 941 (8th Cir. 2017). This case raises a narrow legal question as to whether a noncitizen detained under § 1226 is entitled to a bond hearing. *See Jose J.O.,* 2025 WL 246670, at *7. Whether a detainee under § 1226 is entitled to a bond hearing is a "'purely legal' question [that] fits the exception to § 1252(g)'s jurisdiction-stripping provision, as it can be decided in the abstract on an undisputed factual record." *Id.* (quoting *Nicholas L.L. v. Barr,* No. 19-cv-2543, 2019 WL 4929795, at *3–5 (D. Minn. Oct. 7, 2019).

Federal Respondents also argue the court lacks jurisdiction to hear Hernandez Marcelo's claims under 8 U.S.C. § 1252(a)(5) and (b)(9). ECF No. 25 at 13–16. Federal district courts lack jurisdiction to adjudicate claims challenging removal orders; removal orders may only be reviewed by the appropriate court of appeals. 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ."). The court of appeals' judicial review of a petition for review considers "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Finding jurisdiction in this case does not disturb § 1252(b)(9) from "channeling" challenges to removal orders to courts of appeals. *See Ozturk v. Hyde,* 136 F.4th 382, 399 (2d Cir. 2025) (rejecting a § 1252(b)(9) jurisdictional challenge when a petitioner sought review of detention without a bond hearing because, "even if

[petitioner's detention] claims have a relationship to pending removal proceedings, her claims do not themselves challenge removal proceedings and thus § 1252(b)(9)'s channeling function has no role to play." (citations omitted)); ECF No. 25 at 13. Sections 1252(a)(5) and (b)(9) are not applicable to this case because Hernandez Marcelo is not seeking review of a removal order—no removal order has been issued against him. Instead, Hernandez Marcelo challenges his detention without a bond hearing. ECF No. 31 at 3.

b.    Statutory Basis for Detention

The heart of Hernandez Marcelo's motion for preliminary injunction turns on whether he is being detained under 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226. Federal Respondents argue he is being held under 8 U.S.C. § 1225(b), ECF No. 25 at 16–19, which requires mandatory detention of noncitizens pending a removal proceeding, 8 U.S.C. § 1225(b)(2)(A). Hernandez Marcelo argues he is being held under 8 U.S.C. § 1226(a), ECF No. 13 at 4, which allows for release of noncitizens on bond or under conditional parole pending a removal proceeding, 8 U.S.C. §§ 1226(a)(2)(A) and (B).

The Court notes at the outset the Department of Homeland Security's Notice of Custody Determination as to Hernandez Marcelo states he is being detained "pursuant to the authority contained in section 236 of the Immigration and Nationality Act." ECF No. 3-1 at 5. Section 236 of the Immigration and Nationality Act is codified in 8 U.S.C. § 1226. Federal Respondents point to no record evidence suggesting Hernandez Marcelo is being detained pursuant to 8 U.S.C. § 1225(b)(2); instead, they rely on the text of § 1225 and congressional intent arguments. ECF No. 25 at 16–20. Federal Respondents are unlikely to succeed on the merits where the record evidence states Hernandez Marcelo is being detained pursuant to the discretionary detention regime of § 1226. *See Jose J.O.E.,* 2025 WL 246670, at *8 (requiring respondents to hold a bond hearing under 8 U.S.C. § 1226(a) when petitioner was arrested and detained under § 1226(a) and

respondents pointed to no record evidence suggesting petitioner was arrested and detained under § 1225; did not argue they exercised some available procedural right to change the legal basis of petitioner's arrest and detention; and did not cite authority suggesting they possessed the unilateral right to change the legal basis of petitioner's arrest).

Federal Respondents cite to the plain text of § 1225(b)(2) to support their position that the mandatory detention requirements of § 1225(b), rather than the discretionary detention provision of § 1226, applies to Hernandez Marcelo. ECF No. 25 at 16–19. Hernandez Marcelo is likely not subject to mandatory detention under the plain text of § 1225(b).

As defined by statute, an "applicant for admission" to the United States is "an alien present in the United States who has not been admitted or who arrives in the United States…." 8 U.S.C. § 1225(a)(1). The parties do not contest Hernandez Marcelo, as "an alien present in the United States" since 2021 "who has not been admitted," may be considered an "applicant for admission" to the United States. 8 U.S.C. § 1225(a)(1); *see* ECF No. 12 ¶ 28. To be subject to the mandatory detention provision of § 1225(b)(2), as Federal Respondents argue here, several additional conditions must be met. For mandatory detention to apply, the plain text of § 1225(b)(2)(A) requires an individual to be 1) an "applicant for admission"; 2) "seeking admission"; and 3) determined by an examining immigration officer to be "not clearly and beyond a doubt entitled to be admitted." *See Martinez v. Hyde,* No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (affirming these "several conditions must be met" for a noncitizen to be subject to mandatory detention under § 1225(b)(2)(A)).

Federal Respondents argue Hernandez Marcelo is "an applicant for admission," and, as such, "seeking admission" to the United States. *Id.* at 18; *see* 8 U.S.C. § 1225(a)(1), (b)(2)(A). Federal Respondents would have the Court interpret "applicant for admission" to be interchangeable with "seeking admission," or at least find all applicants for admission are

necessarily seeking admission to the United States. *See* ECF No. 25 at 18 ("Applicants for admission… are understood to be 'seeking admission' under § 1225(a)(1)."). Other district courts analyzing this issue have found otherwise. *See, e.g., Romero,* 2025 WL 2403827, at *10 ("Again, and importantly, [§ 1225] demonstrates that the categories 'applicants for admission' and 'seeking admission' are not coterminous."); *Lopez Benitez v. Francis*, No. 25 CIV 5937, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) ("If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute."); *Martinez v. Hyde,* No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) (Section 1225(b)(2)(A) "applies where an individual is an 'applicant' who is also *doing* something: 'seeking admission.' … [T]his interpretation has the added benefit of avoiding the presumptively suspect conclusion that the phrase 'seeking admission' has no separate meaning or effect at all."). Reading "seeking admission" as a separate element from "applicant for admission" comports with the plain language of § 1225.

Notably, a noncitizen who is "seeking admission" to the United States can be differentiated from a noncitizen who is already present in the United States. An "applicant for admission" references presence; "seeking admission" refers to the present-tense action of seeking to be admitted. *Romero,* 2025 WL 2403827, at *10 ("[G]iving separate meaning to the phrase 'seeking admission' … sensibly understands [§ 1225(b)(2)(A)] to contain separate requirements for presence ('applicant for admission') and present-tense action ('seeking admission')" (internal citations omitted)). The Supreme Court in *Jennings* solidified this understanding: "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under [§ 1226]" (emphasis added). 583 U.S. at 289. Hernandez Marcelo may be considered an applicant for admission as a

noncitizen present in the United States; he is not understood to be seeking admission.

Hernandez Marcelo does not fall under the three requirements enumerated in § 1225(b)(2)(A). While Hernandez Marcelo may be an applicant for admission, he is not "seeking admission" as defined in the caselaw nor has an immigration officer determined he is "not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). Federal Respondents provide no evidence in the record asserting otherwise. Thus, the mandatory detention provision of § 1225(b)(2), which requires all three elements, likely does not apply to Hernandez Marcelo.

Federal Respondents also argue § 1225 must govern Hernandez Marcelo's detention because "the specific governs the general." ECF No. 25 at 16. Federal Respondents contend § 1226 generally applies to "aliens 'arrested and detained pending a decision' on removal," *id.*; *see* 8 U.S.C. § 1226(a)), while § 1225 only narrowly covers "applicants for admission," ECF No. 25 at 16; *see* 8 U.S.C. § 1225(a). This distinction misinterprets §§ 1225 and 1226; the provisions apply to different classes of noncitizens. Section 1226 applies only when a noncitizen is arrested "on a warrant" and "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Thus, where otherwise appropriate, a noncitizen who is not arrested on a warrant or who is not facing removal from the United States may be subject to detention under 8 U.S.C. § 1225. Section 1225 is not more specific than § 1226. The two provisions are mutually exclusive. *See Romero,* 2025 WL 2403827, at *11 ("Indeed, as the Attorney General has previously recognized, 'section [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens.'" (citing *Matter of M-S-,* 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019))); *see also Lopez Benitez*, 2025 WL 2371588, at *7.

Federal Respondents acknowledge "[w]hen the plain text of a statute is clear, that meaning is controlling and courts 'need not examine legislative history.'" ECF No. 25 at 19 (quoting

*Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp.2d 942, 947 n.3 (E.D. Mo. 2010)).  Nevertheless, the Court will briefly address Federal Respondents' congressional intent argument.  Federal Respondents contend the Court's reading of §§ 1225 and 1226 will put noncitizens who unlawfully enter the country on better footing than those who appear at a port of entry, which could not be Congress's intent. *Id.* at 20 ("Aliens who presented at port of entry would be subject to mandatory detention under § 1225, but those who crossed illegally would be eligible for a bond under § 1226(a)."). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which adjusted noncitizen removal proceedings broadly, did add § 1225(a)(1) to ensure "all immigrants who have not been lawfully admitted . . . are placed on equal footing in removal proceedings." *Torres v. Barr,* 976 F.3d 918, 928 (9th Cir. 2020). However, the congressional intent underlying the IIRIRA and the Court's decision in *Torres* does not bear on noncitizens' detention pending the outcome of removal proceedings—the question at issue here. *See Romero,* 2025 WL 2403827, at *12.

The correct distinction when assessing detention pending removal lies between those located in the United States and those located outside the United States. *Id.* This is because "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001); *see Romero,* 2025 WL 2403827, at *12. Federal Respondents' argument as to congressional intent would allow anyone located in the United States to be examined by an immigration officer and detained without bond as if at the border, eschewing due process rights. Congressional intent does not point to this reading of the statute, nor can the Constitution tolerate such a reading.

Hernandez Marcelo is entitled to a bond hearing on his detention under § 1226. Therefore, the Court finds Hernandez Marcelo is likely to succeed on the merits of his claim against Federal

Respondents.

The Court briefly addresses Federal Respondents' argument contending the Board of Immigration Appeals' September 5, 2025 decision warrants the Court's reconsideration of its oral ruling—memorialized and augmented here—granting in part Hernandez Marcelo's motion for preliminary injunction. *See* ECF No. 34 at 1–2. The reasoning in the Board of Immigration Appeals' decision largely tracks that argued by Federal Respondents in this matter. The Board engages in an exercise of statutory construction, reading 8 U.S.C. §§ 1225 and 1226 to say all noncitizen applicants for admission to the United States are necessarily "seeking admission" to the United States and are thus subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A). ECF No. 34-1 at 5–6. The Board analyzes the plain language of 8 U.S.C. §§ 1225 and 1226; legislative history and congressional intent of the Immigration and Nationality Act; and caselaw to conclude "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id.* at 1. The Court does not find the Board of Immigration Appeals' explanation compelling. For the reasons discussed above, Hernandez Marcelo does not fall within the plain language of 8 U.S.C. § 1225(b); the legislative history and congressional intent of the Immigration and Nationality Act do not support mandatory detention for all noncitizens present in the United States; and the weight of caselaw evaluating noncitizen detention pursuant to removal proceedings falls squarely in line with the Court's conclusions. The Court does not find the Board of Immigration Appeals' interpretation persuasive nor binding on the Court. Therefore, the Court declines to reconsider its oral ruling granting Hernandez Marcelo's preliminary relief of a bond hearing.

c.    Other District Court Authority

As acknowledged by Federal Respondents, the weight of district court authority is with Hernandez Marcelo. The overwhelming majority of district courts to consider this question have

found § 1225 governs detention of noncitizens outside the country who are "seeking admission" to the United States, while § 1226 governs those living in the United States who entered without inspection. *See Jose J.O.E.*, 2025 WL 246670; *Romero*, 2025 WL 2403827; *Maldonado*, 2025 WL 2374411; *Arrazola-Gonzalez v. Noem*, No. 5:25-cv01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Lopez Benitez*, 2025 WL 2371588; *Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted without objection*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM; *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). *But see Pena v. Hyde*, No. CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025). The Board of Immigration Appeals does not address this authority in reaching the contrary conclusion. *See* ECF No. 34-1 at 5–13.

### 2.    State Respondents

Hernandez Marcelo is unlikely to succeed on the merits of his habeas claim against State Respondents because he lacks standing to challenge a future prosecution.

To have standing to bring a claim in federal court, Hernandez Marcelo must bring a "case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). To have standing to seek injunctive relief, he must show

> he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495–96.

In *O'Shea*, residents of Cairo, Illinois, filed suit against state officials, alleging racial

discrimination in setting bonds, imposing sentences, and requiring jury fees of criminal defendants. *Id.* at 491–92. The *O'Shea* plaintiffs did not allege any statute was unconstitutional, any plaintiff was improperly charged with a crime, or any plaintiffs were incarcerated at that time. *Id.* at 495–96. The Supreme Court held the plaintiffs lacked standing. It said,

> If the statutes that might possibly be enforced against [petitioners] are valid laws, and if charges under these statutes are not improvidently made or pressed, the question becomes whether any perceived threat to [petitioners] is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses.

*Id.* at 496. "[A]ttempting to anticipate whether and when these [petitioners] will be charged with crime and will be made to appear before either [respondent] takes us into the area of speculation and conjecture." *Id.* at 497.

Hernandez Marcelo is unlikely to succeed on his claim against State Respondents because it is likely he lacks standing. Hernandez Marcelo does not challenge Iowa Code § 804.11. He argues he is not subject to § 804.11 because his immigration status alone is insufficient to provide probable cause he "might be unavailable for service of a subpoena." ECF No. 13 at 5; Iowa Code § 804.11. He also alleges the State violated his due process and equal protection rights during his now-dismissed material witness proceedings. *See* ECF No. 13 at 5–6.[6] However, Hernandez Marcelo was served the relevant subpoena. *Id.* at 5. The State also dismissed the material witness matter following service. *Id.* The State is now aware that Hernandez Marcelo is represented in this matter. Hernandez Marcelo has failed to allege new charges under § 804.11 are more than conjecture. Some facts may change that may encourage the State to file a new material witness charge, but those facts would be purely hypothetical at this stage. Hernandez Marcelo is unlikely

---

[6] Hernandez Marcelo also alleges procedural deficiencies regarding the writ of habeas corpus ad testificandum. As he has stated that he "requests no specific relief as to the State's writ itself," the Court will not consider any challenges to the State's writ of habeas corpus ad testificandum. ECF No. 12 ¶ 4.

to succeed on his claim against State Respondents due to a lack of standing.

### B.    Threat of Irreparable Harm

In regard to the first *Dataphase* factor, Hernandez Marcelo contends Respondents have caused him irreparable harm because "his bones and muscles are healing without adequate medical supervision or care." ECF No. 13 at 8. Because Hernandez Marcelo remains in custody, he has missed medical and physical rehabilitation appointments scheduled to address the injuries he suffered during the attempted carjacking. *Id.* Hernandez Marcelo also asserts "his continued detention deprives him of his liberty." *Id.* at 5.

"To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010) (quoting *Gen. Motors Corp.*, 563 F.3d at 319).

Hernandez Marcelo has met his burden of showing irreparable harm as to his continued custody. *See Gen. Motors Corp.*, 563 F.3d at 318–19 (clarifying the "burden [is] on [the movant] to establish the threat of irreparable injury"). Hernandez Marcelo remains in custody and continues to be denied an opportunity for a bond hearing related to his immigration proceedings. ECF No. 12 ¶ 1. The loss of liberty resulting from continued custody after denial of a bond hearing constitutes irreparable harm. *See Bondi,* 2025 WL 246670, at *6 ("And there is no question that [Petitioner] will suffer irreparable harm if he is denied the opportunity for a bond hearing"); *see also Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (recognizing "a loss of liberty" is "perhaps the best example of irreparable harm").

Respondents argue Hernandez Marcelo has not established sufficient irreparable harm because he can pursue administrative remedies related to his detention before the Board of Immigration Appeals and the Eighth Circuit. ECF No. 25 at 22. This is essentially an exhaustion argument, which is not required by statute in this context. Additionally, Hernandez Marcelo is not required to exhaust administrative remedies when Petitioner "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim," "[e]ven where the administrative decisionmaking schedule is otherwise reasonable and definite." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Irreparable harm results when a Petitioner establishes he will be incarcerated or detained pending the exhaustion of administrative proceedings. *See Brito v. Garland,* 22 F.4th 240, 256 (1st Cir. 2021).

The Court concludes the threat of irreparable harm as to Hernandez Marcelo's continued detention without a bond hearing weighs in favor of Hernandez Marcelo.

C.   **Balance of Harms and Public Interest**

When a plaintiff seeks injunctive relief against the government, the public interest and balancing of harm factors largely merge. *See Eggers*, 48 F.4th at 564. Under the balance of harm factor, the Court considers "the balance between th[e] harm [to the petitioner] and the injury that the injunction's issuance would inflict on other interested parties." *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994). This factor requires examining the harm granting or denying the injunction poses to all parties to the dispute, as well as other interested parties. See *Dataphase*, 640 F.2d at 113–14; *accord Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). Under the public interest factor, the Court considers whether a preliminary injunction would serve the public interest. *Dataphase*, 640 F.2d at 113. The public interest can include, for example: promoting the national defense, *Winter*, 555 U.S. at 24; protecting constitutional rights, *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008),

overruled on other grounds by *Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc); or having governmental agencies fulfill their obligations, *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011). The Court concludes the final two *Dataphase* factors favor issuance of a preliminary injunction.

Hernandez Marcelo's continued detention under § 1226 without a bond hearing must be balanced against the injury an injunction would inflict on Respondents. Federal Respondents argue the federal government has "a compelling interest in the steady enforcement of its immigration laws," ECF No. 25 at 23, and, as such, "[j]udicial intervention would only disrupt the status quo," *id.* at 24. Just as Respondents maintain an interest in the enforcement of its immigration laws, so too does Hernandez Marcelo and similarly situated noncitizens. Proper governmental enforcement of § 1225 and § 1226, which includes providing a bond hearing when required, is in the public interest. The loss of liberty suffered by Hernandez Marcelo from continued detention without a bond hearing also deprives him of a fundamental right guaranteed to those located in the United States. *See Zadvydas,* 533 U.S. at 693. Federal Respondents will not be harmed by, and do not have in interest in, violation of the plain text of federal law. *See Doe #1 v. Noem*, No. 3:25-cv-00042-RGE-WPK, 2025 WL 1203472, at *6 (S.D. Iowa Apr. 24, 2025) (stating "[t]here is substantial public interest in ensuring that governmental agencies abide by federal laws as there is generally no public interest in the perpetuation of unlawful agency action" (internal quotation marks and citation omitted)). Further, the Court has already established it has jurisdiction over the narrow legal question in this case; the Court does not find inherent harm or a disruption of the status quo in exercising its jurisdiction.

On balance, the relative hardships and public interest justify granting Hernandez Marcelo's request for injunctive relief from Federal Respondents as to a bond hearing.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Petitioner Felipe de Jesus Hernandez Marcelo's Amended Motion for Preliminary Injunction as to Federal Respondents Donald J. Trump, Pamela Bondi, Sirce Owen, Kristi Noem, Todd Lyons, and Jerome Kramer, ECF No. 13, is **GRANTED IN PART AND DENIED IN PART**. Federal Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven days of this written Order.

**IT IS FURTHER ORDERED** that Petitioner Felipe de Jesus Hernandez Marcelo's Amended Motion for Preliminary Injunction as to State Respondents Brenna Bird and James Barry, ECF No. 13, is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Felipe de Jesus Hernandez Marcelo's Amended Motion for a Temporary Restraining Order as to Federal Respondents Donald J. Trump, Pamela Bondi, Sirce Owen, Kristi Noem, Todd Lyons, and Jerome Kramer, and State Respondents Brenna Bird and James Barry, ECF No. 13, is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Federal Respondents Donald J. Trump, Pamela Bondi, Sirce Owen, Kristi Noem, Todd Lyons, and Jerome Kramer's request to reconsider oral ruling, ECF No. 34, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 10th day of September, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE